1 | Simon Lin – State Bar No. 313661
2 | 4388 Still Creek Drive, Suite 237
3 | Burnaby, British Columbia, Canada
  | V5C 6C6
4 | T : 604-620-2666
  | F : 778-805-9830
5 | E : simonlin@evolinklaw.com

*Attorney for Adam Khimji*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
*(San Francisco)*

| | |
|---|---|
| IN RE: DMCA SECTION 512(h) SUBPOENA TO (1) CLOUDFLARE, INC.; (2) PATREON, INC.; and (3) NAMESILO, L.L.C. | Case Number: 3:24-mc-80159-SK<br><br>**NOTICE OF MOTION FOR ORDER TO QUASH DMCA SUBPOENAS, MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF ADAM KHIMJI, DECLARATION OF SIMON LIN, and PROPOSED ORDER**<br><br>**Judge:** Magistrate Judge Sallie Kim<br><br>Date: June 23, 2025<br>Time: 9:30 a.m. |

1

**MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on **June 23, 2025 at the hour of 9:30 a.m**. or as soon thereafter as the matter can be heard, Non-Party Adam Khimji (whose information was disclosed in relation to two subpoenas issued pursuant to a DMCA §512(h)) will appear before the Hon. Sallie Kim and will move, and hereby does move, for an Order:

a. quashing, in part, with prejudice the subpoena issued to Respondent Cloudflare, Inc. by Applicant Visual Supply Company ("**Cloudflare Subpoena**");

b. quashing with prejudice in the subpoena issued to Respondent Patreon, Inc. by Applicant Visual Supply Company ("**Patreon Subpoena**"); and

c. regarding the information previously disclosed from the Cloudflare Subpoena and Patreon Subpoena: (i) restraining the Applicant Visual Supply Company from using the information in any fashion; and (b) mandating that the Applicant Visual Supply Company and their representatives destroy all copies thereof.

This motion to quash is brought on the two distinct grounds that:

1. §512 of the DMCA only allows for a subpoena to discover the identity of a **current** alleged infringer – not the identity of an alleged **past** infringer – as this Court decided in *In Re Maximized Living, Inc. v. Google, Inc.*, Dist. Court, ND Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011); and

2. §512 of the DMCA does not allow trademark claims to be misrepresented as a copyright claim, as this Court decided in *Crossfit, Inc. v. Alvies*, Dist. Court, ND Cal. 2014 (Case No. 13-3771 SC.).

2

**MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

1  This motion is based on this Notice, on the attached Memorandum of Points and
2  Authorities, on the Declarations of Adam Khimji and Simon Lin filed herewith, and on
3  the pleadings and evidence on file in this action.

Date: March 21, 2025        By: _____*Simon Lin*_____

                                Simon Lin – State Bar No. 313661
                                4388 Still Creek Drive, Suite 237
                                Burnaby, BC, Canada V5C 6C6
                                T : 604-620-2666; F : 888-509-8168
                                E : simonlin@evolinklaw.com

**MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

# Contents

**List of Case Authorities** ................................................................................................. 5

**List of Enactments** ........................................................................................................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................ 1

**1.    Introduction** ............................................................................................................... 1

**2.    Visual Supply Company Files this Court Case to Obtain DMCA Subpoenas** .. 2

**3.    Admissions in VSCO's Complaint filed on December 23, 2024** ......................... 2

**4.    Section 512 of the DMCA Does Not Authorize Relief for Past Infringements** .. 4

**5.    A DMCA Subpoena Cannot be Based on Trademark Claims** ............................. 7

**6.    Conclusion and Relief Sought** ............................................................................... 10

**MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

## List of Case Authorities

1. *Crossfit, Inc. v. Alvies*, Dist. Court, ND Cal. 2014 (Case No. 13-3771 SC.)

2. *In Re Maximized Living, Inc. v. Google, Inc*., Dist. Court, ND Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011)

3. *In re Charter Communs., Inc.*, 393 F.3d 771 (8th Cir. 2005)

4. *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.,* 351 F.3d 1229 (D.C. Cir. 2003)

## List of Enactments

1. 17 U.S. Code § 512(c)(3)(A)

2. 17 U.S. Code § 512(f)

3. 17 U.S. Code § 512(h)

**MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction

Mr. Khimji seeks to quash the Cloudflare Subpoena *in part* and the Patreon Subpoena *in full* on the basis that the Applicant Visual Supply Company ("**VSCO**") should have never been issued these subpoenas as they do not meet the statutory requirements of §512: (a) a DMCA subpoena is only for purpose of identifying **current** alleged infringers, not **past** alleged infringers; and (b) a DMCA subpoena must be based on a DMCA notice involving copyright issues, not trademark issues.

Concurrently with this Motion to Quash, Mr. Khimji is serving and filing a separate Rule 11 motion for sanctions (the "**Sanctions Motion**"). While the Sanctions Motion is intimately connected to this Motion to Quash, Mr. Khimji is making the Sanctions Motion separately as required by the text of Rule 11. Mr. Khimji's Sanctions Motion is primarily based on §512(h)(2)(C) that required Visual Supply Company to provide a "*sworn declaration ….. that such information will **only be used for the purpose of protecting rights under this title*** [copyrights]" While VSCO did provide a sworn declaration to that effect in order to obtain the subpoenas, the statement to purportedly satisfy the §512(2)(C) requirement was **false**. VSCO was pursuing trademark claims all along, and most importantly, they *in fact* used the information obtained using the subpoenas for making non-copyright claims.

Mr. Khimji submits that the Sanctions Motion should be decided first as that motion could completely undermine all of VSCO's subpoenas. In any event, the Cloudflare Subpoena and the Patreon Subpoena should be quashed and VSCO should be restrained from using the information in any way and to delete all copies.

1

**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

2. **Visual Supply Company Files this Court Case to Obtain DMCA Subpoenas**

On June 26, 2024, Visual Supply Company (hereafter "**VSCO**") filed this Court case to request subpoenas to be issued to Cloudflare, Inc., Patreon, Inc. and NameSilo, L.L.C. pursuant to §512(h) of the DMCA. VSCO filed three documents:

a) Visual Supply Company's Request to the Clerk for Issuance of Subpoenas Pursuant to Section 512(h) to Identify Alleged Infringers, enclosing three draft subpoenas to Cloudflare, Inc., Patreon, Inc. and NameSilo, L.L.C. (Dckt #2).

   i. The subpoena to Cloudflare seeks information relating to four domain names: (a) downloader.se; (b) vsco.top; (c) vsco.page; and (d) glizzy.cafe (Dckt #2, p. 10) ("**Cloudflare Subpoena**").

   ii. The subpoena to Patreon relates to https://www.patreon.com/vscoclub (Dckt #2, p. 18) ("**Patreon Subpoena**").

   iii. The draft subpoena to NameSilo seeks information relating to one domain name, vsco.top (Dckt #2, p. 25) ("**NameSilo Subpoena**").

b) Declaration of Andrew M. Levad (associate at Sideman & Bancroft LLP) in support of the request for subpoena (the "**Levad Declaration**") (Dckt #2-1).

c) Letter to the Clerk (Dckt #2-2).

The three aforementioned subpoenas were issued by the Clerk of the Court on or about June 28, 2024 without a hearing before any judge of this Court.

3. **Admissions in VSCO's Complaint filed on December 23, 2024**

On December 23, 2024, VSCO filed a Complaint in *Visual Supply Company v. Adam Khimji, et al.* (N.D. Cal. Case No. 3:24-cv-9361-WHO) against Mr. Khimji (Declaration of Adam Khimji [**Khimji Declaration**] at para. 4 and Exh. A).

2

**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

At paragraph 37 of the Complaint, VSCO admitted that it initiated a WIPO domain name dispute resolution and, on October 20, 2023, obtained an order to transfer three domain names to VSCO namely: (a) vsco.page; (b) vsco.club; and (c) glizzy.cafe (Khimji Declaration, Exh. A, p. 13):

> *37. On August 28, 2023, VSCO filed a complaint pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") in the WIPO Arbitration and Mediation Center, seeking the transfer of the <vsco.page>, <vsco.club>, and <glizzy.cafe>domains from Defendants to VSCO. See Visual Supply Company ("VSCO") v. Nice IT Services Group Inc., Customer Domain Admin and Aiden Salamon, WIPO Case No. D2023-3616 (Oct. 20, 2023). On October 20, 2023, the WIPO panel appointed to this action determined that Defendants had violated the UDRP and ordered the transfer of <vsco.page>, <vsco.club>, and <glizzy.cafe> from Defendants to VSCO. VSCO is informed and believes, and thereon alleges, Mr. Khimji received notice and copies of all WIPO correspondence and pleadings related to this UDRP action.*

Information on the vsco.page and glizzy.cafe domains were sought in the *subsequent* Cloudflare Subpoena on June 26, 2024, despite the previous transfers.

At paragraph 38 of the Complaint, VSCO admitted that it initiated a WIPO domain name dispute resolution and, on April 3, 2024, obtained an order to transfer one domain name to VSCO, namely vsco.top (Khimji Declaration, Exh. A, p. 14):

> *38. On February 9, 2024, VSCO filed a complaint pursuant to UDRP in the WIPO Arbitration and Mediation Center, seeking the transfer of the <vsco.top> domain from Defendants to VSCO. See Visual Supply Company ("VSCO") v. Nice IT Services Group Inc., Customer Domain Admin, WIPO Case No. D2024-0621 (Apr. 3, 2024). On April 3, 2024, the WIPO panel appointed to this action determined that Defendants had violated the UDRP and ordered the transfer of <vsco.top> from Defendants to VSCO. VSCO is informed and believes, and thereon alleges, Defendants received notice and copies of all WIPO correspondence and pleadings related to this UDRP action.*

Information on the vsco.top domain were sought in the *subsequent* Cloudflare Subpoena on June 26, 2024, despite the previous transfers.

3

**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

**4. Section 512 of the DMCA Does Not Authorize Relief for Past Infringements**

*In Re Maximized Living, Inc. v. Google, Inc.*, ND Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011) – see heading under "**B. No Infringing Activity at the Time of Notification**", this Court found that the DMCA subpoenas could only be used to seek information for **current** alleged infringers, and not **past** alleged infringers.

Section 512 only addresses infringements existing *at the time the subpoena is served*; it does not provide a remedy for past infringements. The entire statute is predicated upon the procedures for notice to an ISP of infringing material and procedures to assure that the ISP can avoid civil liability by taking the infringing material down. For example, in addition to §512(c) discussed above, §512(d) relieves ISP's from liability for linking users to an online location **containing** infringing material or infringing activity, by using information location tools so long as it "does not have actual knowledge that the material or activity **is infringing**", and so long as once infringing material is discovered, it "acts expeditiously to remove, or disable access to, the material" (§512(d)(1)(C)) (emphasis added).

An ISP cannot remove from its site, or disable, infringing material that is not there. It is thus clear that §512 was not intended to allow aggrieved copyright holders to seek redress for past infringements. The courts concur; see *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs*., 351 F.3d 1229, 1233 (D.C. Cir. 2003):

> Verizon maintains the two subpoenas obtained by the RIAA fail to meet the requirements of § 512(c)(3)(A)(iii) in that they do not - because Verizon is not storing the infringing material on its server - and can not, identify material "to be removed or access to which is to be disabled" by Verizon. Here Verizon points out that §512(h)(4) makes satisfaction of the

4

**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

> notification requirement of §512(c)(3)(A) a condition precedent to issuance of a subpoena.
>
> We conclude from both the terms of § 512(h) and the overall structure of § 512 that, as Verizon contends, a subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity" (emphasis added).

Accord, *In re Charter Communs., Inc.*, 393 F.3d 771, 777 (8th Cir. 2005).

At the time of seeking the subpoenas, there could not be infringing material on three of the four websites covered by the Cloudflare Subpoena (i.e., vsco.top; vsco.page; and glizzy.cafe) since VSCO **already transferred** these domains to themselves, as admitted. Hence no subpoena could legally issue, and the Cloudflare Subpoena relating to these three domains must be quashed on this basis alone.[1]

Indeed, in the evidence in support of the request for the **Cloudflare Subpoena**, VSCO could only point to alleged infringements prior to the WIPO transfers:

a) For the domains vsco.page, and glizzy.cafe, VSCO only pointed to a submission to Cloudflare on about July 13, 2023 (Levad Declaration, Dckt. 2-1, paragraph 3). VSCO's evidence **predates** the October 20, 2023 WIPO order for transfer of these domains. The WHOIS domain history of vsco.page shows VSCO was the owner months before VSCO sought the subpoena (Declaration of Simon Lin [**Lin Declaration**], Exh. C, p. 31). The letter VSCO sent to Mr. Khimji in October 2024 also confirms that any alleged infringement on glizzy.cafe were from July 2023 (Khimji Declaration, Exh. B, pp. 32-34). The screenshots taken by a third-party again show that glizzy.cafe was already inaccessible in 2023 (Lin Declaration, Exh. D, p. 62). VSCO failed to present any *current* infringement close to June 26, 2024 for either domain.

---

[1] To the extent that VSCO claims later on that Mr. Khimji's information is also identified in the downloader.se domain, Mr. Khimji reserves the right to quash that portion of the Cloudflare Subpoena for the same reasons.

5

**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

b) For the domain vsco.top, VSCO could only point to a submission to Cloudflare made on January 3, 2024 (Levad Declaration, Dckt. 2-1, paragraph 4), which also **predates** the April 3, 2024 WIPO order for transfer of this domain. The WHOIS domain history vsco.top shows VSCO's name months before VSCO sought the subpoena (Lin Declaration, Exh. B, p. 17).

Furthermore, the text of the Cloudflare Subpoenas, which were drafted by VSCO using past tense language, confirms that the alleged infringements were in the past:

*2. DOCUMENTS sufficient to identify the operator(s) and/or owner(s) of the website **https://www.vsco.top/**, for which YOU provide**d** network service solutions, …*

*3. DOCUMENTS sufficient to identify the operator(s) and/or owner(s) of the website **https://www.vsco.page/**, for which YOU provide**d** network service solutions, …*

*4. DOCUMENTS sufficient to identify the operator(s) and/or owner(s) of the website **https://www.glizzy.cafe/**, for which YOU provide**d** network service solutions, …*

(emphasis added with underline and red) (Subpoenas in Dckt. #4, pp. 6-7)

With respect to the **Patreon Subpoena**, besides the obvious misstatement in paragraph 7 of the Levad Declaration (which will be addressed in the next section), the Patreon Subpoena on its face acknowledge that VSCO is pursuing previous alleged infringements and not current alleged infringements:

*1. DOCUMENTS sufficient to identify the operator(s) and/or owner(s) of the Patreon account "VSCO.CLUB" with a website formerly located at **https://www.patreon.com/vscoclub/**,*

(emphasis added with underline) (Subpoenas in Dckt. #4, p. 21)

VSCO was fully aware of the fact that the alleged infringements relating to Patreon was in the past, in an email from Patreon to VSCO's counsel on July 28, 2023:

6
**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

> …*The material you identified in your notification of claimed copyright infringement is <u>no longer live</u> on Patreon*….

>> (Dckt. 2-1, Levad Declaration at Exhibit E, p. 27)

The Cloudflare Subpoena, insofar as it relates to the domain names vsco.top; vsco.page; and glizzy.cafe, and the entire Patreon Subpoena, all relate to **prior** alleged infringements. As detailed above, this Court has noted that section 512 is not for pursuing **prior** alleged infringements, but **current** alleged infringements. These subpoenas never met the statutory requirements of section 512 on June 26, 2024 (the date the subpoenas were requested) and should never have been issued.

**5.   <u>A DMCA Subpoena Cannot be Based on Trademark Claims</u>**

In addition to the request for the Patreon Subpoena failing to deal with current alleged infringements, the request fails to meet other statutory requirements of section 512(h), namely section 512(h)(2)(A), which provides that:

> *(2)Contents of request.—The request may be made by filing with the clerk—*
>> *(A)a copy of <u>a notification described in subsection (c)(3)(A)</u>;*

>> (emphasis added)

Section 512(c)(3)(A) specifically provides the following statutory requirements for a proper DMCA request to the service provider:

> **(3)Elements of notification.—**
>
> **(A)***To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:*
>
>> **(i)** *A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.*

7
**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

> *(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.*
>
> *(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.*
>
> *(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.*
>
> *(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.*
>
> *(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.*

(*In Re Maximized Living, Inc. v. Google, Inc*., N.D. Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011), see the paragraphs following the "**II. Legal Standard**" heading)

The alleged DMCA notification that Mr. Levad referred to in paragraph 7 of his Declaration, which attached an Exhibit E (an email chain involving Ms. Portnoy), clearly could **not** meet the requirements of Section 512(c)(3)(A)(ii)-(iii) and (v)-(vi):

> *7. **Patreon, Inc.** On July 25, 2023, Ms. Portnoy utilized Patreon Inc.'s ("Patreon") Reporting Abuse portal to submit <u>a copyright infringement and DMCA violation abuse report to Patreon identifying infringing content posted at <https://www.patreon.com/vscoclub></u>. True and correct copies of Patreon's confirmation email for this abuse report is attached hereto as Exhibit E.*

To begin with, Exhibit E is an email submitted by Ms. Portnoy (a partner of the same firm as Mr. Levad) which made reference to trademarks at the outset. Using the DMCA process to advance trademark claims may itself be a misrepresentation

8
**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

that is actionable under section 512(f) - *Crossfit, Inc. v. Alvies*, N.D. Cal. 2014 (Case No. 13-3771 SC.)

Indeed, Ms. Portnoy's email does not meet the requirements of Section 512(c)(3)(A)(ii), in that it fails to identify *any* copyrighted work that is allegedly infringed. Instead, Ms. Portnoy claimed that "*The Infringing Website is using the VSCO Marks in the url (https://www.patreon.com/vscoclub)...*" (emphasis added)

Similarly, section 512(c)(3)(A)(iii) is also not satisfied in that there is no reference to any copyright protected works to remove or take down. Instead, Ms. Portnoy said:

> **VSCO requests that you cease providing further services to the Infringing Website and notify the Infringing Website that the use of the VSCO Marks is infringing.**
>
> (bold emphasis in original, emphasis added with underline)

Section 512(c)(3)(A)(v) is also not met. Ms. Portnoy's email omitted a "*statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.*"

Finally, section 512(c)(3)(A)(v) is not met when Ms. Portnoy's email does not even contain a "*statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.*" (emphasis added)

In other words, Mr. Levad appears to have misrepresented a trademark notification as a DMCA notification that somehow satisfied the statutory requirement in 512(h)(2)(A), when that trademark notification clearly did not meet the requirements. Indeed, Mr. Levad even characterized Ms. Portnoy's email as

9
**MEMORANDUM OF POINTS AND AUTHORITIES- MOTION TO QUASH SUBPOENA**
Case Number: 3:24-mc-80159-SK

"identifying infringing content" when Ms. Portnoy's email fails to identify a single piece of work that is copyright protected. The misrepresentation is rather troubling.

*7. **Patreon, Inc.** On July 25, 2023, Ms. Portnoy utilized Patreon Inc.'s ("Patreon") Reporting Abuse portal to submit <u>a copyright infringement and DMCA violation abuse report to Patreon identifying infringing content posted at <https://www.patreon.com/vscoclub></u>. True and correct copies of Patreon's confirmation email for this abuse report is attached hereto as Exhibit E.*

## 6. Conclusion and Relief Sought

Mr. Khimji submits that the Sanctions Motion, which is separately filed, may itself be a complete answer for quashing all of the subpoenas. In any event, for this motion to quash, Mr. Khimji respectfully submits that there is a strong case for quashing the Cloudflare Subpoena in part (excluding the portion for downloader.se) and the entire Patreon Subpoena. These subpoenas should be quashed with prejudice as there is no evidence that the failure to meet the Section 512 requirements could be cured.

In addition, Mr. Khimji also seeks an Order restraining VSCO from using any of the information that were obtained using the quashed Cloudflare Subpoena and Patreon Subpoena, if this Court were to quash those subpoenas. VSCO should also be ordered to destroy all copies of Mr. Khimji's personal information that they have obtained using those subpoenas.

Date: March 21, 2025

Respectfully submitted,

By: _____*Simon Lin*_____

Simon Lin – State Bar No. 313661
4388 Still Creek Drive, Suite 237
Burnaby, BC, Canada V5C 6C6
T : 604-620-2666; F : 778-805-9830
E : simonlin@evolinklaw.com