ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:       *zalinder@sideman.com*
ANDREW M. LEVAD (State Bar No. 313610)
E-Mail:       *alevad@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Plaintiff
VISUAL SUPPLY COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DMCA SECTION 512(h) SUBPOENA TO (1) CLOUDFLARE, INC.; (2) PATREON, INC., and (3) NAMESILO, L.L.C. | Case No. 3:24-mc-80159-SK<br><br>**VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH DMCA SUBPOENAS**<br><br>Date:     June 23, 2025<br>Time:     9:30 a.m.<br>Place:    Courtroom C, 15th Floor<br>Judge:    Hon. Sallie Kim |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION    ...............................................................1

II.     RELEVANT FACTUAL BACKGROUND ........................................1

        A.      VSCO, Its Services, And Its Intellectual Property ....................1

        B.      VSCO Discovers Defendants' Infringing Websites And Online Communities..........2

        C.      VSCO Begins Copyright And Trademark Enforcement Against Defendants'
                Websites, But Is Unable To Ascertain Defendants' True Identities ....................3

        D.      VSCO Requests Issuance Of DMCA Subpoenas To Identify The Creators
                Of Defendants' Infringing Websites, Which This Court Reviews And
                Approves .........................................................................4

        E.      Cloudflare And Patreon Provide Documents Responsive To The DMCA
                Subpoenas, And Both Identify Mr. Khimji ..............................6

        F.      VSCO Sends A Copyright And Trademark Enforcement Letter To Mr.
                Khimji, But He Refuses To Comply ......................................7

        G.      After Careful Consideration, VSCO Initiates The Instant Litigation........................8

        H.      Mr. Khimji Serves The Motion for Sanctions And A Motion To Quash,
                Then Files A Scattershot Motion To Dismiss ...........................8

III.    LEGAL STANDARD ....................................................................9

IV.     ARGUMENT .............................................................................9

        A.      This Court Should Deny The Motion As Untimely And Procedurally
                Improper Because This Action Has Been Terminated for Nearly a Year And
                Should Not Be Reopened to Entertain New, Baseless Filings .................10

        B.      The DMCA Allows Subpoenas To Discover The Identity Of Current Or Past
                Alleged Infringers .................................................................11

        C.      VSCO Properly Used DMCA Takedowns And Subpoenas To Enforce
                Against Copyright-Infringing Content; Mr. Khimji Cannot Quash The
                Subpoenas Merely Because He Posted Trademark-Infringing Content Too ..............1

V.      CONCLUSION ........................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blair v. California*,
  No. CV 09-4460-GW(AGRX), 2013 WL 12213845 (C.D. Cal. Sept. 5, 2013) .................... 11

*In re Charter Commc'ns, Inc., Subpoena Enf't Matter*,
  393 F.3d 771 (8th Cir. 2005)................................................................. 15

*CrossFit, Inc. v. Alvies*,
  No. 13-3771 SC, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014) ......................................... 16, 17

*Davis v. Adams*,
  No. 88 C 9127, 1989 WL 26821 (N.D. Ill. Mar. 21, 1989)........................................... 11

*In re DMCA Subpoena to eBay, Inc.*,
  No. 15CV922-BEN-MDD, 2015 WL 3555270 (S.D. Cal. June 5, 2015).............. 9, 10, 13, 14

*Gibson v. Kane*,
  No. CIVA 06-2209, 2007 WL 30294 (M.D. Pa. Jan. 3, 2007) .......................... 11

*Maximized Living, Inc. v. Google, Inc.*,
  No. C11-80061 ................................................................. 11, 12, 13, 14

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
  351 F.3d 1229 (D.C. Cir. 2003) ................................................. 15

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
  941 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................ 14

*Visual Supply Company v. Khimji et al.*,
  No. 3:24-cv-09361-WHO (N.D. Cal.)........................................................ 1, 7, 8, 10

*In re Winslow*,
  132 B.R. 1016 (D. Colo. 1991) ................................................... 11

**Statutes**

17 U.S.C. § 512 ..............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 45 ................................................................................... 9

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH DMCA SUBPOENAS

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## I.    INTRODUCTION

Adam Khimji's Motion to Quash (the "Motion" or "Mot.") is a baseless, procedurally improper, and very belated attempt to hide the fact that he orchestrated an unlawful, infringing, and depraved scheme against Plaintiff Visual Supply Company ("VSCO"), its platform, and its users. VSCO could not have acted more consistently with the DMCA, applicable Federal caselaw, and in good faith to unmask Mr. Khimji and enforce its rights against him than what occurred here. He also cannot unring the bell—two different websites, including Patreon which apparently was sending him the ill-gotten gains here, exposed Mr. Khimji as the culprit. His complaints to the contrary, long after-the-fact, merely reflect that he has no conscience and feels no guilt for his unlawful conduct.

The Court should deny his motion in its entirety and with prejudice. VSCO also respectfully submits that the Court should impose sanctions for such a frivolous motion and bad faith abuse of this long-terminated miscellaneous matter.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    VSCO, Its Services, And Its Intellectual Property

VSCO is a San Francisco Bay Area-based photo technology company and creator platform. Declaration of Akaash Gupta ("Gupta Decl.")[1] ¶ 4. Since 2011, VSCO has cultivated an enormous and vibrant community of creators, to whom it provides innovative tools and resources to elevate their photography, video, and design craft. Gupta Decl. ¶ 4. Currently, VSCO has over 300 million registered users worldwide. Gupta Decl. ¶ 3.

As a trusted staple in the creative community for over a decade, VSCO rigorously protects the intellectual property rights of itself and its users. Specifically, VSCO owns and maintains a global trademark portfolio, including, among many other properties, four incontestable U.S.

---

[1] These citations refer to the Declaration of Akaash Gupta In Support Of Plaintiff Visual Supply Company's Opposition to Defendant Adam Khimji's Motion To Dismiss And/Or Stay filed in *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO-SK (N.D. Cal.), on April 14, 2025 (Dkt. 16-1), a copy of which is attached as Exhibit ("Ex.") A to the Declaration of Andrew M. Levad In Support Of Plaintiff Visual Supply Company's Opposition To Nonparty Adam Khimji's Motion To Quash DMCA Subpoenas ("Levad Decl.") filed concurrently herewith.

VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH
DMCA SUBPOENAS

1  registrations for the word mark VSCO and three for its circular logo. U.S. Trademark Reg. Nos.

2  4,273,434; 4,672,062; 4,262,139; 4,716,756; 5,142,430; 5,271,667; and 5,125,103.

3         In addition, VSCO protects itself and its users through account registration and a

4  comprehensive Terms of Use ("TOU"). Gupta Decl. ¶ 5; Levad Decl. ¶ 4, Ex. B. Pursuant to the

5  TOU, VSCO's users represent and warrant that they have all necessary rights and permissions in

6  the content they post on VSCO's platform, including the copyrights in the images and other

7  creative works that they post, but the TOU authorizes VSCO to enforce those copyrights on its

8  users' behalf. Levad Decl. ¶ 4, Ex. B at p. 3. The TOU further prohibits copying, scraping, or

9  distribution of VSCO users' content. Ex. B at p. 2.

10         Finally, VSCO also employs technological access controls, such as disabling the ability to

11  right click and save images and requiring login credentials for certain activities, and data security

12  tools to prevent third parties from downloading VSCO users' content, sharing or distributing that

13  content, or accessing those users' deleted content or the metadata (such as geolocation data) in the

14  content. Gupta Decl. ¶ 5, Levad Decl. ¶ 4, Ex. B at p. 1-3.

15  **B.    VSCO Discovers Infringing Websites And Online Communities**

16         In May 2023, VSCO discovered the first of a series of websites (the "Infringing Website")

17  and Reddit communities (the "Infringing Reddit Communities") that targeted VSCO to take

18  advantage of its user base. Levad Decl. ¶ 5. The Infringing Websites and Infringing Reddit

19  Communities contained thousands of copyright-protected images of VSCO users, particularly

20  women, that had been scraped from those users' VSCO accounts, as well as those users' VSCO

21  account names and, in many instances, the geolocation data associated with those users' photos.

22  Levad Decl. ¶ 6; Dkt. 5-1, pp. 26-39.[2] The domain names for the Infringing Websites often

23  incorporated the VSCO trademark (*e.g.*, <vsco.club>, <vsco.page>, <vsco.top>, <backupvs.co>,

24  <downloadvsco.co>, <vscolookup.com>, <novsco.co>, <glizzy.cafe>, and <downloader.se>, and

25  <socialgirls.live>, among others); and the subreddit names for the Infringing Reddit Communities

26

27  _____

    [2] VSCO does not dispute that Exhibit B to the Declaration of Adam Khimji In Support Of Motion
28  To Quash (Dkt. 5-1, Ex. B, pp. 25-39) is a true and correct copy of the enforcement letter and
    exhibits thereto that VSCO sent Mr. Khimji on October 4, 2024.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    often incorporated the VSCO trademark with a derogatory slur for the users (*e.g.*, r/VSCOsluts,

2    r/VSCOsluts0, r/VSCOslutss, r/VSCOslutsz2, r/VSCOsloots, and r/VSCO_Nudes, among others).

3    Levad Decl. ¶ 7.

4          The Infringing Websites and Infringing Reddit Communities are interactive and allow

5    internet users to traffic these VSCO users' copyright-protected images among one another,

6    advertise, and sell access to the website creators' personal repositories of scraped images, and, in

7    many instances, see exactly where these users' photos were taken using an interactive "Map"

8    feature applying the stolen images' geolocation data. *Id.* ¶ 8. The Infringing Websites and

9    Infringing Reddit Communities all contained substantial unauthorized use of VSCO's trademarks.

10   *Id.*

11         In addition to the Infringing Websites and Infringing Reddit Communities, VSCO

12   discovered a Patreon account named "VSCOclub." *Id.* ¶ 9; Dkt. 5-1, p. 36. The "VSCOclub"

13   Patreon was associated with the Infringing Websites <vsco.club> and <glizzy.cafe>, and allowed

14   users to buy subscriptions to repositories of these VSCO users' images, including their deleted

15   content, and advertised that the Patreon account owner had "10+ million [VSCO users'] accounts

16   saved." Levad Decl. ¶ 9; Dkt. 5-1, p. 36.

17         The creators and operators of the Infringing Websites, Infringing Reddit Communities, and

18   the "VSCOclub" Patreon account took extreme measures to obfuscate their true identities. Levad

19   Decl. ¶ 10. They operated only under aliases and anonymous email addresses and used proxy

20   services to register the Infringing Websites, which shielded their identities from WHOIS and other

21   lookup tools. *Id.* The <vsco.club> and <glizzy.cafe> websites contained the anonymous contact

22   email address "vscoclub@protonmail.com." *Id.* ¶ 11.

23         **C.     VSCO Begins Copyright And Trademark Enforcement Against The**

24                **Infringing Websites, But Is Unable To Ascertain The Creators' True Identities**

25         VSCO began copyright and trademark enforcement efforts against Infringing Websites and

26   Infringing Reddit Communities promptly after it discovered them. *Id.* ¶ 12. VSCO, through

27   counsel, submitted trademark and copyright infringement reports to the domain registrars and web

28   hosts for the Infringing Websites in May 2023, July 2023, July 2023, December 2023, January

3

2024, March 2024, April 2024, May 2024, July 2024, September 2024, October 2024, and November 2024, requesting that they take down or disable access to the Infringing Websites. Levad Decl. ¶ 13. VSCO, through counsel, also submitted trademark and copyright infringement reports to Reddit in December 2023, January 2024, February 2024, July 2024, August 2024, September 2024, and October 2024, requesting that Reddit take down or disable access to the Infringing Reddit Communities. *Id.*

On August 28, 2023, VSCO filed a complaint pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") in the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO"), seeking the transfer of the <vsco.page>, <vsco.club>, and <glizzy.cafe> domains. *Id.* ¶ 14. In this proceeding, on September 1, 2023, WIPO identified the registrant behind <vsco.club> and <glizzy.cafe> with the alias, "Aidan Salamon", with a fictitious address in Toronto, Canada, and the email address "vscoclub@protonmail.com." *Id.* And on August 28, 2023, WIPO determined that the <vsco.page>, <vsco.club>, and <glizzy.cafe> domains had been registered in violation of the UDRP, and ordered that they all be transferred to VSCO. *Id.*

On February 9, 2024, VSCO filed another UDRP complaint in WIPO, seeking transfer of the <vsco.top> domain. *Id.* ¶ 15. In this proceeding, on February 14, 2024, WIPO identified the registrant behind <vsco.top> with the proxy service "Nice IT Services Group Inc.", with a fictitious address in Loubiere, Dominica, and an anonymized email address "domains+vsco.top@dendrite.network." *Id.* And on April 3, 2024, WIPO determined that the <vsco.top> domain had been registered in violation of the UDRP, and ordered that it be transferred to VSCO. *Id.*

### D.    VSCO Requests Issuance Of DMCA Subpoenas To Identify The Creators Of The Infringing Websites, Which This Court Reviews And Approves

After months of escalating trademark and copyright enforcement actions against Infringing Websites and Infringing Reddit Communities, on June 28, 2024, VSCO initiated the instant miscellaneous matter, *In re DMCA Subpoenas to Cloudflare, Inc.*, et al., No. 24-mc-80159-SK (N.D. Cal.), pursuant to 17 U.S.C. § 512(h) of the Digital Millennium Copyright Act ("DMCA"),

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   seeking the issuance of subpoenas ("DMCA Subpoenas") to ascertain the identities of the persons

2   responsible for the infringement of its users' copyrights, which the TOU authorizes VSCO to do

3   on its users' behalf. Gupta Decl. ¶ 5; Levad Decl. ¶ 4, Ex. B at p. 3. These same individuals are

4   responsible for DMCA anti-circumvention violations.

5   　　　　Specifically, VSCO sought issuance of DMCA Subpoenas to three internet service

6   providers involved in the creation or operation of the Infringing Websites that hosted or monetized

7   the depraved scraped content: (1) Cloudflare, Inc. ("Cloudflare"), the registrar and/or web host for

8   <vsco.club>, <glizzy.cafe>, <vsco.page>, <vsco.top>, and <downloader.se>; (2) Patreon, Inc.

9   ("Patreon"), the operator of the monetization platform for the "VSCOclub" Patreon; and (3)

10  NameSilo, LLC ("NameSilo"), the registrar for <vsco.top>. Levad Decl. ¶ 16. In the DMCA

11  Subpoenas, VSCO sought production of documents from these internet services providers

12  sufficient to identify the persons who had unlawfully accessed, downloaded, scraped and further

13  copied and distributed copyright-protected images from VSCO's platform on the Infringing

14  Websites. *Id.*

15  　　　In its request for issuance of the DMCA Subpoenas, VSCO submitted the records of its

16  copyright and DMCA takedown notices issued to Cloudflare, Patreon, and NameSilo that it had in

17  its possession:

18  　　• As for Cloudflare, VSCO submitted a declaration that its counsel used Cloudflare's

19  　　　　established intellectual property abuse reporting procedures to submit copyright

20  　　　　infringement and DMCA abuse reports regarding <vsco.club>, <glizzy.cafe>,

21  　　　　<vsco.page>, <vsco.top>, and <downloader.se> on July 13, 2023; January 3 and 10,

22  　　　　2024; March 15 and 22, 2024; and April 2 and 9, 2024. VSCO also submitted copies of

23  　　　　Cloudflare's confirmation of receipt of these copyright infringement and DMCA abuse

24  　　　　reports, and a chart displaying 250 links of webpages that displayed copyright-

25  　　　　protected content on the Infringing Websites and the corresponding VSCO webpages

26  　　　　where that content had been unlawfully copied. Dkt. 2-1, ¶¶ 3-6, Exs. A-D.

27  　　• As for Patreon, VSCO submitted a declaration that its counsel used Patreon's

28  　　　　established intellectual property abuse reporting procedures to submit a copyright and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 3:24-mc-80159-SK

VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH
DMCA SUBPOENAS

trademark takedown notice regarding the "VSCOclub" Patreon on July 25, 2023. VSCO also submitted a copy of Patreon's confirmation of receipt of this takedown notice. Because the "VSCOclub" Patreon page contained both copyright and trademark infringements, VSCO's abuse report contains allegations of both copyright and trademark infringement. Dkt. 2-1, ¶ 7, Ex. E; *see also* Dkt. 5-1, p. 36.

- As for NameSilo, VSCO submitted a declaration that its counsel used NameSilo's established intellectual property abuse reporting tools to submit a copyright and trademark infringement and DMCA abuse report regarding <vsco.top> on January 3, 2024. VSCO also submitted copies of NameSilo' confirmation of receipt of this abuse report and a screen-capture showing VSCO's submission of the abuse report. Dkt. 2-1, ¶ 8, Ex. F.

On June 28, 2024, this Court granted VSCO's request for issuance of the DMCA Subpoenas. *In re DMCA Subpoenas to Cloudflare, Inc., et al.*, No. 24-mc-80159-SK (N.D. Cal.) (Dkt. 4). VSCO then served the DMCA Subpoenas on Cloudflare, Patreon, and NameSilo on July 1 and 2, 2024. Levad Decl. ¶ 17. No party challenged the DMCA Subpoenas. *Id.* ¶ 18. And, on June 28, 2024, this Court terminated this action. *Id.*

**E.    Cloudflare And Patreon Provide Documents Responsive To The DMCA Subpoenas, And Both Identify Mr. Khimji**

In August 2024, Cloudflare and Patreon produced documents in response to the DMCA Subpoenas issued to them. Levad Decl. ¶ 19. Specifically, Cloudflare produced account registration records for <vsco.club> and <glizzy.cafe> (which is a domain redirect from <vsco.club>), and Patreon produced account registration records for the "VSCOclub" Patreon. *Id.* These records display, consistent with one another, Mr. Khimji's full name, his physical address, the email address "vscoclub@protonmail.com," which ties to the same email identified in the WIPO proceedings, and also, as to Cloudflare, Mr. Khimji's credit card information. *Id.*

To date, NameSilo has not produced records in response to the DMCA Subpoena issued to it, indicating that discovery in this action is needed to secure the relevant documents and information regarding the Infringing Domains in NameSilo's possession. *Id.* ¶ 20.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**F.      VSCO Sends A Copyright And Trademark Enforcement Letter To Mr. Khimji, But He Refuses To Comply**

On October 4, 2024, VSCO sent Mr. Khimji a copyright and trademark enforcement letter using the contact information it learned through the DMCA Subpoenas. Levad Decl. ¶ 21; Dkt. 5-1, pp. 26-39. In this letter, VSCO demanded that Mr. Khimji cease and desist his conduct that violated the Copyright Act, the DMCA, the Lanham Act, state unfair competition statutes, and the common law, and further demanded that he cooperate in VSCO's investigation into the other Infringing Websites and Infringing Reddit Communities. Levad Decl. ¶ 21; Dkt. 5-1, pp. 26-30. VSCO specifically sought information on the specific means by which Mr. Khimji and the other creators of the Infringing Websites circumvented VSCO's security measures in violation of the DMCA to scrape and download its users' copyright-protected images and related data. Levad Decl. ¶ 21; Dkt. 5-1, pp. 28-29.

Mr. Khimji retained counsel to respond and negotiate, and VSCO provided this counsel the documentation showing Mr. Khimji's involvement in the Infringing Websites produced pursuant to the DMCA Subpoenas. Levad Decl. ¶ 22. However, after months of attempting to negotiate a resolution of the dispute in good faith with Mr. Khimji's counsel, Mr. Khimji ultimately refused to comply with this enforcement letter or provide any information. *Id.* Mr. Khimji then terminated that counsel's representation, requiring VSCO to file this action. *Id.*

**G.      After Careful Consideration, VSCO Brought Suit Against Mr. Khimji Under The Lanham Act, The UCL, And The Common Law**

Upon Mr. Khimji's refusal to cooperate or provide any information to assist VSCO's investigation into the violations of VSCO and its users' rights, VSCO carefully and strategically evaluated all known facts and applicable laws. *Id.* ¶ 23. This miscellaneous matter had been terminated at this point for almost six months, and of course as the above makes clear, was never the sole basis for VSCO's action. *Id.* ¶¶ 17, 23.

On December 23, 2024, VSCO brought a civil action against Mr. Khimji and Doe Defendants under the Lanham Act, California's Unfair Competition Law, and California common law. *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 1) (the

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

"Litigation"). Proceeding swiftly with trademark, unfair competition, trespass to chattels, and breach of contract claims allowed VSCO to enforce its rights and protect its users without delay. Levad Decl. ¶ 23. As Mr. Khimji refused to cooperate in providing information about his illegal conduct or that of his co-conspirators, VSCO cannot be blamed for its strategic decision to await further discovery before asserting its claims under the Copyright Act and/or the DMCA. Levad Decl. ¶¶ 21-23. Mr. Khimji would have also attempted to blame VSCO if it had asserted these claims at the outset rather than waiting for further discovery, but the reality is that VSCO acted at all times in good faith and fully consistent with Federal law. Of course, VSCO reserves its right to amend the Complaint to assert those claims (and any other additional claims) at the appropriate time and with a more complete factual record. *Id.* ¶ 23.

### H.    Mr. Khimji Serves The Motion for Sanctions, Then Files A Scattershot Motion To Dismiss

On December 30, 2025, after Mr. Khimji refused to cooperate, VSCO served the Complaint in the Litigation on Mr. Khimji. *Id.* ¶ 24; *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 1).

On January 8, 2025, Mr. Khimji executed a waiver of service of the summons in the Litigation, setting his deadline to respond to the Complaint in the Litigation on March 31, 2025. *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 9).

On March 12, 2025, Mr. Khimji's new counsel, Simon Lin, informed VSCO that he had been retained to represent Mr. Khimji in the Litigation. Levad Decl. ¶ 25.

On March 21, 2025, Mr. Khimji served the instant Motion to Quash and a meritless Motion for Sanctions on VSCO. *Id.* ¶ 26.

On March 31, 2025, Mr. Khimji filed a Motion to Dismiss in the Litigation, seeking dismissal of VSCO's Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, arbitration (despite no arbitration proceeding being initiated), forum non conveniens, and failure to state a claim. *Visual Supply Company v. Khimji*, No. 3:24-cv-09361-WHO Dkt., 15. This motion is fully briefed and remains pending. *Id.*, Dkts. 16, 17.

And on May 12, 2025, Mr. Khimji filed the instant Motion to Quash the DMCA

VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH DMCA SUBPOENAS

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Subpoenas. Dkt. 5.

## III.    LEGAL STANDARDS

The DMCA provides a statutory scheme for copyright holders and their agents to notify internet service providers of the existence of allegedly copyrighted material on those providers' servers. 17 U.S.C. § 512(c)(3). When a copyright holder submits such a takedown notice to an internet service provider, it may also request that the court issue a subpoena to the provider. 17 U.S.C. § 512(h); *In re DMCA Subpoena to eBay, Inc.*, No. 15CV922-BEN-MDD, 2015 WL 3555270, at *1 (S.D. Cal. June 5, 2015). If the court grants the copyright holder's request, the subpoena authorizes and orders the provider to provide the copyright holder with information sufficient to identify the alleged infringer. 17 U.S.C. § 512(h)(3).

Motions to quash subpoenas must be filed "timely" and by "a person subject to or affected by [the] subpoena." Fed. R. Civ. P. 45(d)(3). "Timely" generally means "before the date specified with compliance with the subpoena." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875, n. 2 (N.D. Cal. 2022). In the context of a DMCA subpoena, a motion to quash may also be considered timely "so long as it is filed within a reasonable time after the conclusion of informal efforts to resolve the [receiving party's] objections." *Id.*

The DMCA and Federal Rules do not contain any provisions permitting a person already identified pursuant to a DMCA subpoena to quash the subpoena that identified him. *See generally* Fed. R. Civ. P. 45; 17 U.S.C. § 512(h).

## IV.    ARGUMENT

This Court should deny the Motion in full and order Mr. Khimji to desist from filing any additional pleadings in this long-concluded miscellaneous matter. First, the Motion is untimely and procedurally improper, as this action has been terminated for nearly a year and there is no legal basis to reopen it now to entertain new filings. Second, Mr. Khimji's contention that the DMCA permits subpoenas only to identify an infringer whose infringements remain ongoing at the time the subpoena is served is wrong as a matter of law; the statute contains no such limitation, and courts have routinely permitted DMCA subpoenas to identify past infringers. Third, VSCO properly used the DMCA process to remove copyright-infringing content and obtain identifying

information via subpoena. Mr. Khimji's attempt to quash the subpoenas fails because the presence of additional trademark-infringing content on his websites does not invalidate VSCO's lawful use of the DMCA. Each of Mr. Khimji's arguments lacks merit and provides no basis for relief.

> **A.      This Court Should Deny The Motion As Untimely And Procedurally Improper Because This Action Has Been Terminated for Nearly a Year And Should Not Be Reopened to Entertain New, Baseless Filings**

Mr. Khimji's motion is untimely because it was not filed before the date Cloudflare and Patreon were ordered to comply with the DMCA Subpoenas, or within a reasonable time for such objections to be lodged (even assuming Mr. Khimji was a proper party to raise such objections, which he is not).

This action was terminated eleven months ago. Cloudflare and Patreon did not object to or move to quash the DMCA Subpoenas that they received pursuant to this action; rather, they both complied with them and both independently produced documents identifying Mr. Khimji. Levad Decl. ¶ 19. VSCO informed Mr. Khimji that he had been identified as a copyright infringer pursuant to the DMCA Subpoenas over seven months ago when it sent him the October 4, 2024, enforcement letter and provided copies of the materials produced pursuant to the DMCA Subpoenas to him and his counsel. Levad Decl. ¶¶ 21-22. The DMCA subpoena and its purpose was served by that point in time and any further question about the DMCA subpoena concluded at the same time. Meanwhile, Mr. Khimji remained silent as to any objection to the DMCA Subpoenas until over five months later, on March 21, 2025, when his counsel served a copy of this Motion on VSCO. Levad Decl. ¶¶ 21-26. And Mr. Khimji did not even file the instant Motion until nearly two months after that, on May 12, 2025, weeks after his motion to dismiss the Litigation had been fully briefed and awaiting decision. In no way is such extensive delay in filing the Motion "reasonable." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 875, n. 2.

Furthermore, Mr. Khimji does not request in the Motion that this action be reopened, nor does he identify any basis in the Motion establishing his standing to quash subpoenas to internet service providers who have already complied with them. As such, this Motion is not the proper

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    mechanism for the relief Mr. Khimji seeks, and it should be denied. *Cf. Blair v. California*, No.

2    CV 09-4460-GW(AGRX), 2013 WL 12213845, at *3 (C.D. Cal. Sept. 5, 2013) ("While the Court

3    need not comment on the viability of [Plaintiff's argument] as a grounds for obtaining the relief

4    sought in Plaintiff's ex parte application, suffice it to say that filing a TRO in a terminated case is

5    not the proper mechanism for doing so.") (denying ex parte application for TRO filed in a

6    dismissed action). A closed case does not spring back to life merely because a pleading is

7    lodged—particularly by one with no standing to revive it. *See Gibson v. Kane*, No. CIVA 06-

8    2209, 2007 WL 30294, at *1 (M.D. Pa. Jan. 3, 2007). ("Plaintiff's motions have been improperly

9    filed in a terminated case, allege errors occurring in other unrelated cases and otherwise are

10   patently without merit and therefore will be denied").

11       Because this action and all issues decided herein have long since been resolved, and

12   because no motion Mr. Khimji could file in this action could be considered timely, in addition to

13   denying this Motion, this Court should further order Mr. Khimji to file no other documents in this

14   case and find Mr. Khimji in contempt of court if he violates such order. *Id.* (ordering the plaintiff

15   to "discontinue filing any motions, pleadings or other documents or letters of any kind in this

16   closed case"); *see also In re Winslow*, 132 B.R. 1016, 1018 (D. Colo. 1991) (denying motion filed

17   in a terminated case and ordering a restriction on that party's ability to file further motions); *Davis

18   v. Adams*, No. 88 C 9127, 1989 WL 26821, at *1 (N.D. Ill. Mar. 21, 1989) (denying motion filed

19   in terminated case and ordering the filer "on pain of a potential finding that he is in contempt of

20   court, to tender *no other documents* for filing in this case") (emphasis in original).

21       **B.      The DMCA Allows Subpoenas To Discover The Identity Of Current Or Past**

22            **Alleged Infringers**

23       Next, Khimji argues that it was improper for the DMCA Subpoenas to have issued in the

24   first place because, at the time VSCO filed the request to issue the DMCA subpoena, the

25   infringing material had already been removed. Not so. As other cases have found, this argument is

26   based on a misapplication of *Maximized Living, Inc. v. Google, Inc.*, No. C11-80061 MISC CRB,

27   2011 WL 6749017, at *3 (N.D. Cal. Dec. 22, 2011).

28       In *Maximized Living*, a copyright owner requested and obtained a DMCA subpoena to

11

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Google to identify an infringer before that owner had submitted a DMCA takedown to remove that

2   infringing content. 2011 WL 6749017 at *1. And before Google complied with that subpoena, the

3   infringer moved to quash it because the subpoena did not meet the statutory requirements of the

4   DMCA and because it was overbroad. *Id.* The court agreed with the infringer, noting that it was

5   improper to seek a DMCA subpoena before submitting a DMCA takedown notice, and granted the

6   motion to quash. *Id.* Then, the next day, the infringer took down the infringing content of his own

7   accord. *Id.*

8       However, a month later, the copyright owner then issued a DMCA takedown notice to

9   Google, demanding the infringer's already-removed content be removed. *Id.* at *1, *3. And

10  months after that, the copyright owner requested and obtained a second DMCA subpoena to

11  identify the infringer who had posted the already-removed content. *Id.* Before Google complied

12  with the second subpoena, the infringer moved to quash it. *Id.* The infringer argued that the

13  DMCA takedown notice giving rise to the second DMCA subpoena was not proper because it was

14  asking Google to take down content that the infringer had already taken down. *Id.* at *3-*4. The

15  court agreed with the infringer; it noted that DMCA takedown notices must be directed at content

16  that is currently being hosted, so, the copyright owner's DMCA takedown notice directed at the

17  content that the infringer had already removed did not comply with the statute. *Id.* at *4-*6. And

18  because the copyright owner's underlying DMCA takedown notice was improper, the court held

19  that the second DMCA subpoena should not have issued, and it granted the motion to quash. *Id.* at

20  *4-*6. In other words, the *Maximized Living* court quashed the first subpoena because it was not

21  preceded by a takedown notice; and it quashed the second subpoena because the underlying

22  takedown notice was submitted after the infringing content had already been removed.

23      Here, unlike in *Maximized Living* VSCO's DMCA takedown notices underlying its request

24  for the DMCA Subpoenas were procedurally proper—at the time VSCO submitted its DMCA

25  takedown notices to Cloudflare and Patreon, those platforms were actively hosting the infringing

26  content. Levad Decl. ¶ 13; Dkt. 2-1, pp. 2-3. Thus, the subsequent DMCA subpoenas based on

27  those takedown notices were procedurally correct, regardless of whether the infringing content had

28  been removed when the subpoenas issued. Furthermore, unlike in *Maximized Living*, the infringer

1  moved to quash the subpoenas before Google had complied with them, and before the

2  miscellaneous matter opened to issue those subpoenas had been terminated. 2011 WL 6749017 at

3  *1-*2. Here, on the contrary, the subpoenaed entities long ago complied with the subpoenas and

4  identified Mr. Khimji as the creator of <vsco.club>, <glizzy.cafe>, and the "VSCOclub" Patreon,

5  and the miscellaneous matter was terminated almost a year ago. For these reasons, *Maximized*

6  *Living* is inapposite, and does not provide any basis for retroactive quashing of the DMCA

7  Subpoenas.

8       In addition, nowhere in *Maximized Living* does the court hold that the DMCA statute

9  requires the infringing content to be actively hosted at the time the <u>*subpoena*</u> is served. Rather, as

10  set forth above, the court held that the infringing content must be actively hosted at the time the

11  <u>*takedown notice underlying the subpoena*</u> is submitted. *Id.* at *4-*6. Subsequent California District

12  Court authority squarely clarifies this issue.

13       *In re DMCA Subpoena to eBay, Inc.*, No. 15CV922-BEN-MDD, 2015 WL 3555270, at *1

14  (S.D. Cal. June 5, 2015) is on point. There, alleged infringers had posted copyright-infringing

15  listings to the eBay platform. *Id.* at *1. The copyright owner submitted DMCA takedown notices

16  to eBay, and eBay complied with the notices by disabling access to the infringing listings. *Id.*

17  Thereafter, the copyright owner requested issuance of a DMCA subpoena to eBay to identify the

18  persons who had posted infringing listings, which the court granted, and the subpoena was served

19  on eBay. *Id.* But rather than comply with the subpoena, eBay filed a motion to quash it on the

20  ground that "no infringing activity was occurring on eBay's servers at the time the subpoena was

21  served." *Id.* at *1. Specifically, relying "primarily" on *Maximized Living*, eBay argued that the

22  DMCA subpoena was invalid "because at the time it was obtained and served, access to the

23  allegedly infringing materials had been removed." *Id.* at *2. However, after examining *Maximized*

24  *Living*, the Court noted that the present-tense language of the DMCA applies to its notification

25  requirement, not the subpoena provision as eBay had posited. *Id.* at *3. That is, the "Court

26  disagree[d] with eBay that *Maximized Living* requires that the allegedly infringing material remain

27  available, after notification, for an enforceable DMCA subpoena to issue for identifying

28  information of the alleged infringer under § 512(h)." *Id.* The court went on to provide even more

13

explicit clarity that copyright owners may use DMCA subpoenas to identify past infringers, so long as they had submitted DMCA takedown notices while the infringing content was actively being hosted:

> To be clear, the Court finds that a DMCA subpoena is valid whether served simultaneously with a satisfactory DMCA notification or after a satisfactory DMCA notification is served. A satisfactory DMCA notification requires that the allegedly infringing material is present at the time the notification is served. The subpoena is valid and enforceable regardless of whether the provider acts in response to the notification.

*Id.* (noting ("[t]he provider's safe harbor does not shield the alleged infringer."). For these reasons, the Court determined the DMCA subpoena was valid and ordered eBay to identify the alleged infringers. *Id.* at *4. This is dispositive of Mr. Khimji's Motion to Quash here.

Here, Mr. Khimji is advancing the same flawed argument as eBay did in *eBay*, namely, that the DMCA Subpoenas to Cloudflare and Patreon are invalid because, at the time VSCO sought and obtained them, Cloudflare and Patreon had already removed the infringing content pursuant to VSCO's DMCA takedown notices. Mot. at 9-12. And like eBay did in *eBay*, Mr. Khimji relies on the same incorrect reading of *Maximized Living* to reach this conclusion. Mot. at 9-12. But, like the copyright owner in *eBay*, VSCO had properly submitted takedown notices to Cloudflare and Patreon while those platforms were actively hosting the infringing content. Levad Decl. ¶ 13; Dkt. 2-1, pp. 2-3. Thus, as the *eBay* Court clarified, *Maximized Living* does not preclude VSCO's seeking DMCA subpoenas to identify the persons behind the infringing content, regardless of whether the content had been removed before VSCO obtained and served the subpoenas. 2015 WL 3555270, at *4. Thus, the DMCA Subpoenas were valid as issued, and Mr. Khimji has no basis to assert otherwise. *Id.*; *see also Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1150 (N.D. Cal. 2013) (denying motion to quash and rejecting the infringer's argument that "because he removed the infringing document prior to receiving a take-down notice, the DMCA may no longer be used to identify him because he is a past infringer.").

Furthermore, unlike both *eBay* and *Maximized Living*, Mr. Khimji is not a party to this miscellaneous case that issued the DMCA Subpoenas; both Cloudflare and Patreon have already complied with the DMCA Subpoenas and identified Mr. Khimji; and this matter is long

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  terminated. Mr. Khimji identified no authority under which he may seek relief in this

2  circumstance. Indeed, the only other cases Mr. Khimji cited in support of his position, *Recording*

3  *Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) and *In re*

4  *Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771 (8th Cir. 2005), are inapposite.

5  Neither case is precedential in this Circuit. *Recording Indus.*, 351 F.3d at 1231; *Charter*

6  *Commc'ns*, 393 F.3d at 772. Both cases evaluated the application of DMCA to peer-to-peer

7  ("P2P") file sharing programs that merely acted as a conduit for data transferred between two

8  Internet users. *Recording Indus.*, 351 F.3d at 1231-33; *Charter Commc'ns*, 393 F.3d at 772-73.

9  And in both cases, the Courts court held that a DMCA subpoena may not be issued to an internet

10  service provider acting as a conduit for P2P file sharing that did not involve the storage of

11  infringing material on the provider's server. *Recording Indus.*, 351 F.3d at 1238-39; *Charter*

12  *Commc'ns*, 393 F.3d at 777-78. Here, unlike the subpoena recipients in *Recording Indus.* and

13  *Charter Commc'ns*, Cloudflare and Patreon are not P2P file-sharing programs; they were both

14  storing the infringing content on their servers, so they were the proper recipients of VSCO's

15  DMCA takedown notices and subsequent DMCA Subpoenas.

16         Accordingly, all of Mr. Khimji's arguments against the validity of the DMCA Subpoenas

17  are without merit and should be rejected.

18  **C.     VSCO Properly Used DMCA Takedowns And Subpoenas To Enforce Against**

19  **Copyright-Infringing Content; Mr. Khimji Cannot Quash The Subpoenas**

20  **Merely Because He Posted Trademark-Infringing Content Too**

21         Mr. Khimji also seeks to have the DMCA Subpoena issued to Patreon *post-facto* quashed

22  because it is allegedly "based on trademark claims" rather than merely based on the DMCA

23  statute. Mot. at 12. His request is meritless. Mr. Khimji does not have standing to quash the

24  DMCA Subpoena to Patreon that was lawfully granted after this Court reviewed and accepted

25  evidence that VSCO submitted a combined copyright and trademark takedown notice to Patreon in

26  accordance with Patreon's established procedures. The DMCA subpoena statute does not

27  authorize the subjects of already-disclosed information—like Mr. Khimji—to retroactively

28  challenge the issuance of a subpoena validly directed to a service provider, and Mr. Khimji has not

1  cited any authority to the contrary. The only case Mr. Khimji cites in support of his position,

2  *CrossFit, Inc. v. Alvies*, No. 13-3771 SC, 2014 WL 251760, at *1 (N.D. Cal. Jan. 22, 2014), is

3  unrelated to the circumstances at hand.

4       *CrossFit* was on a motion to dismiss. 2014 WL 251760, at *1. There, a blogger had

5  launched a blog and a Facebook page that incorporated CrossFit's trademarks. 2014 WL 251760,

6  at *1. But according to the blogger, her webpages did not infringe CrossFit's copyrights. *Id.* at *1-

7  *2. Despite this lack of copyright infringement, CrossFit sent a DMCA takedown notice to

8  Facebook, and Facebook disabled her page. *Id.* Thereafter, CrossFit sued the blogger for

9  trademark infringement, and the blogger counterclaimed for a declaratory judgment that CrossFit's

10  invocation of the DMCA was improper given that CrossFit did not allege the infringement of any

11  copyright on the Facebook page. *Id.* at *2. CrossFit then moved to dismiss the blogger's

12  declaratory relief counterclaim for failure to state a claim. *Id.* Because CrossFit's motion

13  challenged the sufficiency of the blogger's counterclaim, the Court restricted its analysis to the

14  blogger's recitation of the facts. *Id.* at *3. And because the blogger pled that CrossFit never

15  claimed copyright infringement to have occurred on her Facebook page, and because the blogger

16  pled that the disabling of her Facebook page caused her to lose income, the Court held that the

17  blogger plausibly stated a claim for a declaratory judgment that CrossFit misused the DMCA. *Id.*

18  at *2-*3. For these reasons, the court allowed the blogger's counterclaim for declaratory relief to

19  proceed past the pleading stage. *Id.* at *3.

20       Here, unlike the blogger's Facebook page in *CrossFit*, Mr. Khimji's "VSCOclub" Patreon

21  page was replete with both copyright *and* trademark infringements. Dkt. 5-1 at p. 36.[3] Indeed, on

22  the "VSCOclub" Patreon, Mr. Khimji openly posted photos and videos scraped from VSCO users'

23  accounts (all of which were subject to copyright protection that those users had granted VSCO the

24  right to enforce), and advertised on the Patreon page that he had "10+ million" of these accounts

25  saved. Dkt. 5-1 at p. 36; Levad Decl. ¶ 4, Ex. B at p. 3. Furthermore, unlike *CrossFit*, because the

26  Motion is not a motion to dismiss, this Court is not restricted to Mr. Khimji's recitation of the

27

28    [3] This is a true and correct printout of the "VSCOclub" Patreon page as of June 29, 2023, before
   Patreon disabled access to it.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

VISUAL SUPPLY COMPANY'S OPPOSITION TO NONPARTY ADAM KHIMJI'S MOTION TO QUASH
DMCA SUBPOENAS

1  facts; and even if this Court were so restricted, Mr. Khimji has never alleged that his "VSCOclub"

2  Patreon page (or his related Infringing Websites <vsco.club> and <glizzy.cafe>) did not post

3  copyright-infringing materials. *See generally*, Mot. Simply put, *CrossFit* imparts no authority for

4  Mr. Khimji to *post facto* quash a subpoena that was lawfully issued nearly a year ago, months after

5  his identification as a copyright infringer. Further, there is no dispute that there are plain violations

6  of the DMCA here. Mr. Khimji has claimed that he is not sophisticated enough to commit these

7  legal violations, and as such VSCO cannot be blamed for waiting for further discovery to bring

8  them.

9       In sum, VSCO submitted a single combined copyright and trademark takedown notice to

10  Patreon because Mr. Khimji's Patreon page contained both types of infringement. Dkt. 2-1, ¶ 7,

11  Ex. E; *see also* Dkt. 5-1, p. 36. Patreon received VSCO's takedown notice, reviewed it, deemed it

12  acceptable, removed the infringing materials, and then sent confirmation of this action to VSCO.

13  Dkt. 2-1 at p. 27. And then VSCO submitted a declaration to this Court that it had submitted its

14  takedown notice to Patreon in its request for issuance of the DMCA Subpoenas, and attached a

15  copy of Patreon's email confirmation. Dkt. 2-1 at pp. 3, 27-29. This Court reviewed all of these

16  materials, deemed them acceptable, and granted issuance of the DMCA Subpoena to Patreon. Dkt.

17  4. Patreon then received the DMCA Subpoena, reviewed it, complied with it, and produced the

18  records that identified Mr. Khimji as the creator and operator of the "VSCOclub" Patreon account.

19  Levad Decl. ¶ 19. That means that Patreon identified that Mr. Khimji was monetizing the unlawful

20  and infringing images accessed and scraped from VSCO. If this were a case of simple identity

21  theft, why would the actual infringers send their ill-gotten gains to Mr. Khimji? At no point did

22  Patreon or this Court question the propriety of VSCO's combined copyright and trademark

23  takedown notice—indeed, there is no such rule that VSCO was not allowed to identify both

24  copyright and trademark infringements in a single takedown notice, and Mr. Khimji has not

25  identified any authority that such a rule exists. It frankly is an absurd proposition.

26       Accordingly, Mr. Khimji's attempt to unwind the lawful issuance of the subpoena after

27  Patreon and Cloudflare have already complied with it is procedurally improper and unsupported

28  by law. The Court should therefore deny Mr. Khimji's motion to quash with prejudice.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## V.     CONCLUSION

Mr. Khimji's Motion is untimely, procedurally improper, and devoid of legal merit. The DMCA Subpoenas were lawfully issued by this Court, and Mr. Khimji's after-the-fact objections offer no grounds for relief here. For the foregoing reasons, this Court should deny the Motion in its entirety and order Mr. Khimji to refrain from wasting any more judicial and party resources with additional filings in this long-terminated matter.

DATED: May 27, 2025

Respectfully submitted,

SIDEMAN & BANCROFT LLP

By: _____
Zachary J. Alinder
Attorneys for Plaintiff
VISUAL SUPPLY COMPANY