Simon Lin – State Bar No. 313661
4388 Still Creek Drive, Suite 237
Burnaby, British Columbia, Canada V5C 6C6
T : 604-620-2666
F : 778-805-9830
E : simonlin@evolinklaw.com

*Attorney for Adam Khimji*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
*(San Francisco)*

| | |
|---|---|
| IN RE: DMCA SECTION 512(h) SUBPOENA TO (1) CLOUDFLARE, INC.; (2) PATREON, INC.; and (3) NAMESILO, L.L.C. | Case Number: 3:24-mc-80159-SK <br><br> **ADAM KHIMJI'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA** <br><br> **Judge:** Magistrate Judge Sallie Kim <br><br> **Date:** June 23, 2025 <br> **Time:** 9:30 a.m. |

**ADAM KHIMJI'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

# Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY** ....................................... 1

**1.    Overview in Reply** ............................................................................................. 1

**2.    *Coxcom* is a Complete Answer to the Opposition and is on All Fours Here** ................ 2

  i.    This Motion to Quash was Properly Filed on a Timely Basis ........................................... 2

  ii.   VSCO's Failure to Proceed against NameSilo ................................................................. 4

  iii.  VSCO's Own Evidence is that CloudFlare is a Mere Conduit .......................................... 4

  iv.   VSCO Failed to Address the Substance of the Patreon Subpoena .................................. 6

  v.    Information Should be Destroyed and VSCO Should be Enjoined from Using It ............ 7

  vi.   Coxcom is the Complete Answer to VSCO's Opposition .................................................. 7

**3.    Trademark Claims Cannot be Sneaked into the DMCA Takedown Process** .............. 8

**4.    VSCO's Five Material Misrepresentations in the Supporting Declaration** ................ 9

  i.    Mr. Levad's Declaration Falsely Asserts that Cloudflare is Actively Hosting the Allegedly Infringing Content .................................................................................................. 10

  ii.   Mr. Levad's Declaration Insinuates VSCO May Raise Copyright Act Claims .............. 10

  iii.  Mr. Levad's Incorrectly Claims that Mr. Khimji Terminated Former Counsel ............. 13

  iv.   Mr. Levad's Declaration Misrepresents How Mr. Khimji was Served ........................... 14

  v.    Mr. Levad Misrepresents that Socialgirls.live was Part of the Complaint ..................... 14

**5.    Conclusion and Relief Sought** ............................................................................................. 15

**ADAM KHIMJI'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

# TABLE OF AUTHORITIES

## Cases

*Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993) .................. 11

*Couponcabin LLC v. Savings. Com, Inc.*, No. 2:14-CV-39-TLS (N.D. Ind. Jun. 8, 2016) 12

*Crossfit, Inc. v. Alvies, Dist. Court,* ND Cal. 2014 (Case No. 13-3771 SC.) ........................ 8

*DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017). 11

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019) ........ 12

*In re DMCA Subpoena to eBay, Inc.,* 2015 WL 3555270 (S.D. Cal. June 5, 2015) . 3, 5, 6, 7

*In Re Maximized Living, Inc. v. Google, Inc.*, Dist. Court, ND Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011 ................................................................................ 3

*In Re: Subpoena of Internet Subscribers of Cox Communications, LLC And Coxcom LLC.* Case No. 23-00426 JMS-WRP. (D. Haw., Apr. 26, 2024) ....................................... 2

*In Re: Subpoena of Internet Subscribers of Cox Communications, LLC And Coxcom LLC.* Case No. 23-00426 JMS-WRP. (D. Haw., Jan. 30, 2024) .............................. passim

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) ....... 12

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................... 12

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) ............... 11

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) ................................................ 11

*Viral Drm LLC v. Seven West Media Limited*, Case No. 24-cv-06354-WHO (N.D. Cal. Feb. 28, 2025) ..................................................................................................... 12

*Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB, 2012 WL 4387420*, at *1 (S.D. Tex. Sept. 25, 2012) ........................................................................................ 3

## Other Authorities

*A Quick Fix for Online Trademark Infringement*, published in The Federal Lawyer, July 2012 ............................................................................................................... 8

*Freedom of Speech and the DMCA: Abuse of the Notification and Takedown Process*, (2019) 41 E.I.P.R. 71 ............................................................................................. 9

**ADAM KHIMJI'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

H. Rept. 105-551 Part 2- WIPO Copyright Treaties Implementation and On-Line
  Copyright Infringement Liability Limitation ................................................................... 4

*The Importance of a Comprehensive Trademark Enforcement Program: The Changing
  Tides of Trademark Infringement*, NYSBA *Inside,* Spring/Summer 2016 ........................ 9

**ADAM KHIMJI'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY

### 1. Overview in Reply

VSCO's battery of <u>both</u> technical and substantive objections were all rejected in *In Re: Subpoena of Internet Subscribers of Cox Communications, LLC And Coxcom LLC.* Case No. 23-00426 JMS-WRP. (D. Haw., Jan. 30, 2024) [*Coxcom*] and is a **complete answer** here.

Moreover, despite having been called out *thrice* for filing declarations containing obvious misrepresentations, VSCO continues to make blatant misrepresentations in the declaration in opposition to the Motion to Quash, and then based its submissions on the misrepresentations.

VSCO's declaration contains **<u>five</u>** material[1] misrepresentations that would substantially undermine VSCO's various assertions: (a) Mr. Levad claimed in ¶13 that "[a]t the time VSCO submitted these reports to these platforms, <u>they were actively hosting</u> the infringing content" [emphasis added], which is contradicted by the numerous Cloudflare emails in his declaration used to obtain the DMCA subpoena in June 2024 (Dckt. No: 2-1); (b) at ¶23, Mr. Levad insinuates that VSCO could amend their Complaint to raise copyright claims, as a last-ditch effort to avoid responsibility for abuse of the law.[2] **Decades** of jurisprudence confirms that persons with non-exclusive licenses, like VSCO, has <u>no standing</u> to sue for copyright infringement. Mr. Levad's bald insinuation simply ignores the law; (c) Mr. Levad claimed in ¶22 that Mr. Khimji "terminated this counsel's representation [referring to Mr. Khimji's former Canadian counsel]" when correspondences show otherwise; (d) Mr. Levad claimed in ¶24 that "[o]n December 30, 2024, VSCO served the Complaint in the Litigation on Mr. Khimji", when, in fact, the Complaint was emailed to the former Canadian counsel that Mr. Levad claims was "terminated"; and (e) at ¶7, Mr. Levad continues to proffer the misrepresentation that <socialgirls.live> is part of the Complaint VSCO filed, when it is not.

---

[1] Mr. Khimji does not intend to detail each and every misrepresentation or inappropriate content in Mr. Levad's declaration. Some examples include ¶8 where Mr. Levad is making bald assertions about "interactivity" (which was an issue disputed in the separate Motion to Dismiss), and also throughout the declaration where Mr. Levad purports to "join" copyright and trademark infringement assertions when that is wholly unsupported by the Declaration he filed in Dckt. 2-1.
[2] Trademark claims cannot be sneaked into the DMCA as detailed further below.

1

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

**2.   *Coxcom* is a Complete Answer to the Opposition and is on All Fours Here**

The bulk of the technical and substantive arguments that VSCO bases their Opposition on were dealt with in *In Re: Subpoena of Internet Subscribers of Cox Communications, LLC And Coxcom LLC*. Case No. 23-00426 JMS-WRP. (D. Haw., Jan. 30, 2024) [***Coxcom***], which accepted the Findings and Recommendations of Magistrate Judge Porter from August 31, 2023 (Supplemental Declaration of Simon Lin as Ex. A [***Coxcom Findings and Recommendations***]). A motion to reconsider and stay was denied *In Re: Subpoena of Internet Subscribers of Cox Communications, LLC And Coxcom LLC*. Case No. 23-00426 JMS-WRP. (D. Haw., Apr. 26, 2024) [***Coxcom Reconsideration***].[3]

   i.   *This Motion to Quash was Properly Filed on a Timely Basis*

VSCO's opposition is mainly based on the assertion that the Motion to Quash was untimely due to: (a) subpoenas were already issued on June 28, 2024 and the file automatically closed the same day; and (b) the timeliness requirement in Fed. R. Civ. P. Rule 45.

Neither of VSCO's assertions has any merit. It is VSCO's blatant attempt to avoid responsibility for improper use of the DMCA process, relying on unfounded technicalities.

**Firstly**, in *Coxcom*, the Petition for a DMCA subpoena was filed April 13, 2023, and the DMCA subpoena issued on the same day. *Coxcom Findings and Recommendations*, p. 2, 4. After the subpoena was already issued, one of the affected persons filed a motion to quash more than a month later, on May 24, 2023. *Coxcom Findings and Recommendations*, p. 4.

In *Coxcom*, the Court quashed the subpoena for failure to comply with Subsection 512(h) of the DMCA, which is the same circumstance in this case. VSCO's assertion that just because the file is automatically closed after the subpoena was issued that the Court no longer has the jurisdiction to quash the subpoena is non-sensical. All DMCA subpoenas are filed on an *ex parte* basis, without involvement of the John Doe or the internet intermediary. If the Court is powerless once a subpoena has issued, the DMCA process could be easily abused.

---

[3] This motion to reconsider and stay was appealed to the Ninth Circuit in File No: 24-3978 and oral argument for that appeal is scheduled for June 5, 2025.

2

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

Similarly, the fact that the information having already been released pursuant to the subpoena is not a reason to prevent a subpoena from being quashed. Of note, in *Coxcom Findings and Recommendations* at pages 15-16 (under the heading "II. Information Already Received by Petitioners), the Court had no trouble quashing the subpoenas *for information already received pursuant to the DMCA subpoena*, and ordering that the Petitioner "to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the information from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena" citing *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 778 (8th Cir. 2005). Indeed, the subsequent clarification of relief that the Court provided in *Coxcom Reconsideration* that the Petitioner "may not continue to seek settlement with any subscriber who has not yet concluded an agreement, and may not use information received from subscribers as evidence in litigation." [emphasis added]

**Secondly**, in both *Coxcom* and *In Re Maximized Living, Inc. v. Google, Inc.*, Dist. Court, ND Cal. 2011 (C11-80061 MISC CRB (EDL), Dec. 22, 2011, the courts dealt with the quashing of a DMCA subpoena, and neither court refused relief based on timeliness in Fed. R. Civ. P. Rule 45. Indeed, the key in motions to quash DMCA subpoena is the validity of the subpoena itself, not the motion's timeliness ("[w]hen analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena." *Coxcom Findings and Recommendations* at p. 5 citing *In re DMCA Subpoena to eBay, Inc.,* 2015 WL 3555270, at *2 (S.D. Cal. June 5, 2015); *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash* [code omitted], 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012)). (In any event, the motion to quash was timely, as detailed below starting from page 13, line 21.)

Moreover, the text of Fed. R. Civ. P. Rule 45(d)(3)(A) provides that the timeliness requirement is limited to enumerated circumstances only: (i) failing to provide a reasonable time to comply; (ii) person is outside the geographical limits; (iii) disclosure of privileged materials; and (iv) subjects the person to undue burden. **None** of these four enumerated circumstances involve a failure to comply with the explicit statutory text of the DMCA.

3

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

      ii.      <u>VSCO's Failure to Proceed against NameSilo</u>

In ¶20 of his Declaration, Mr. Levad noted that:

> To date, NameSilo has not produced records in response to the DMCA subpoena issued it.

In the submissions on page 6, VSCO claimed that: [emphasis added]

> To date, NameSilo has not produced records in response to the DMCA Subpoena issued to it, <u>indicating that discovery in this action is needed to secure the relevant documents and information regarding the Infringing Domains in NameSilo's possession</u>. *Id*. ¶ 20.

Setting aside the fact that the underlined portion of the submissions are clearly <u>not</u> supported by the Declaration or any evidence, Mr. Levad failed to explain *why* VSCO has not attempted to enforce the DMCA subpoena against NameSilo after sitting on it for almost a year. The assertion that "discovery in this action is needed to secure the relevant documents and information regarding the Infringing Domains in NameSilo's possession" is unconvincing as enforcing a DMCA subpoena would appear to be a rather straightforward measure. **Most importantly**, VSCO's <u>inaction</u> appears to be a tacit admission that VSCO knows their DMCA subpoena was improper. Mr. Levad's declaration is deliberately silent on this point.

Bringing formal proceedings to enforce a DMCA subpoena would, undoubtedly, attract opposition from NameSilo and attract judicial scrutiny on the validity of the subpoena (*Coxcom Findings and Recommendations* at p. 5). Issuing of a DMCA subpoena is a ministerial function (H. Rept. 105-551 Part 2- WIPO Copyright Treaties Implementation and On-Line Copyright Infringement Liability Limitation at p. 61). The DMCA subpoenas in this case, thus far, has not been subjected to formal judicial scrutiny regarding their validity.

      iii.      <u>VSCO's Own Evidence is that CloudFlare is a Mere Conduit</u>

VSCO dedicates a *substantial* portion of their opposition to argue that CloudFlare is not a "mere conduit" and the caselaw that Mr. Khimji cited in-chief only applied to a "mere conduit." With greatest of respects, *Coxcom Findings and Recommendations* and *Coxcom* are the **complete answer** to VSCO's opposition, along with their own evidence.

It bears emphasizing that in its Memorandum, VSCO asserted <u>twice</u> that:

4

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

at the time VSCO submitted its DMCA takedown notices to <u>Cloudflare</u> and Patreon, those platforms were actively hosting the infringing content. Levad Decl. ¶ 13; Dkt. 2-1, pp. 2-3

**[emphasis added] VSCO's Memorandum at Page 12, lines 24-26**

…But, like the copyright owner in *eBay*, VSCO had properly submitted takedown notices to <u>Cloudflare</u> and Patreon while those platforms were actively hosting the infringing content. Levad Decl. ¶ 13; Dkt. 2-1, pp. 2-3.

**[emphasis added] VSCO's Memorandum at Page 14, lines 16-18**

At para. 13 of Mr. Levad's Declaration, Mr. Levad did **not** even mention Cloudflare:

13. I, and my colleagues at Sideman & Bancroft LLP, submitted trademark and copyright infringement reports to the domain registrars and web hosts for the Infringing Websites in May 2023, July 2023, July 2023, December 2023, January 2024, March 2024, April 2024, May 2024, July 2024, September 2024, October 2024, and November 2024, requesting that they take down or disable access to the Infringing Websites. I, and my colleagues at Sideman & Bancroft LLP, also submitted trademark and copyright infringement reports to Reddit in December 2023, January 2024, February 2024, July 2024, August 2024, September 2024, and October 2024, requesting that Reddit take down or disable access to the Infringing Reddit Communities. I have personally reviewed these reports or printouts thereof. At the time VSCO submitted these reports to these platforms, they were actively hosting the infringing content.

Mr. Khimji submits that the "mismatch" between what Mr. Levad said at paragraph 13 of the supporting Declaration and the unsupported "addition" of Cloudflare in VSCO's submissions was <u>not an accident,</u> but was intentional. VSCO knew all along that Cloudflare was **not** hosting any allegedly infringing materials. This was clearly stated throughout Mr. Levad's Declaration from June 2024, submitted in support of obtaining the DMCA subpoenas:

Cloudflare offers network service solutions including pass-through security services, a content distribution network (CDN) and registrar services. Due to the pass-through nature of our services, our IP addresses appear in WHOIS and DNS records for websites using Cloudflare. <u>Cloudflare cannot remove material from the Internet that is hosted by others</u>.
…
Note: <u>A lookup of the IP for a Cloudflare customer website will show Cloudflare IPs because we are a pass- through network</u>. <u>The actual website is still hosted at the hosting provider indicated above.</u> If the hosting provider has any questions, please have the hosting provider contact us directly regarding this site. Due to attempted abuse of our complaint reporting process, we will only provide the IP of vsco.page to the responsible hosting provider if they contact us directly at abusereply@cloudflare.com.

**Declaration of Andrew Levad on June 26, 2024 at Exhibit A (Dckt. 2-1, p. 5-6)**

5

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

>Cloudflare offers network service solutions including pass-through security services, a content distribution network (CDN) and domain registrar services. Due to the pass-through nature of our services, our IP addresses appear in WHOIS and DNS records for websites using Cloudflare. <u>Cloudflare is not generally a website hosting provider, and we cannot remove material from the Internet that is hosted by others.</u>

**Declaration of Andrew Levad on June 26, 2024 at Ex. B-C (Dckt. 2-1, p. 10-11, 13-17)**

Mr. Levad undoubtedly knew of the emails above as they were attached to his Declaration, and he was the actual recipient of the emails in Exhibits B-C which clearly state that Cloudflare <u>is not a website hosting provider</u> and cannot remove material hosted by others.

The discussion in *Coxcom Findings and Recommendations* at pages 8-14 that an internet company that cannot "remove" copyrighted materials (because they are not hosting it) is a "mere conduit" and a DMCA subpoena against such "mere conduits" would be invalid. This is a complete answer to VSCO's opposition for quashing of the Cloudflare Subpoena.

  iv. <u>VSCO Failed to Address the Substance of the Patreon Subpoena</u>

VSCO's opposition attempts to side step the issue that their "takedown request" to Patreon does not comply with the explicit text of the subsection 512(c) of the DMCA <u>and</u> the associate request for a subpoena to the clerk of the Court similarly failed to comply with subsection 512(h) of the DMCA (Mr. Khimji's Memorandum at pages 7-10).

As noted in *Coxcom Findings and Recommendations* at p. 5, "[w]hen analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena." VSCO heavily relies on *In re DMCA Subpoena to eBay, Inc.,* No. 15CV922-BEN-MDD, 2015 WL 3555270 (S.D. Cal. Jun. 5, 2015) [*eBay*] in its opposition to claim that the allegedly infringing materials were still active or hosted on Patreon at the time. VSCO overlooked that, in *eBay*, the Court stated that "[t]his Court agrees that allegedly infringing material must be available to be removed for the § 512(c)(3) notification to have any effect. See § 512(c)(3)(A)(iii). <u>This Court also agrees that a DMCA subpoena, without a satisfactory notification being served simultaneously with or subsequent to the notification, is not enforceable</u>." [emphasis added]

Here, it is plain that the takedown request to Patreon does not remotely meet the requirements of § 512(c)(3)(A) including in particular (ii) and (iii), in that VSCO failed to

6

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

identify the copyrighted works and also failed to identify what material on Patreon is infringing copyright. (Dckt. 2-1, p. 28-29, in contrast with p. 19-25 to Cloudflare). VSCO's takedown request does not even reference § 512. Applying the reasoning in *eBay*, if the notification was defective, the DMCA subpoena would fall alongside that invalid notification.

The fact that Patreon may have taken action after receiving a takedown request from VSCO is not evidence that VSCO complied with the statutory requirements of the DMCA. Some internet companies may, out of an abundance of caution, takedown materials or otherwise disable access out of their own accord to avoid potential liability down the road.

VSCO's after-the-fact excuse that they were attempting to pursue both copyright and trademark claims cannot change the reality that their takedown request and the subpoena request to the clerk of the Court does not meet the explicit DMCA statutory requirements.

v.   *Information Should be Destroyed and VSCO Should be Enjoined from Using It*

Despite the DMCA subpoenas were already issued, and information already being provided to the requesting party, the Court in *Coxcom* had no difficulty ordering the requesting party "to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the information from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena" *Coxcom Findings and Recommendations* at pages 15-16 (under the heading "II. Information Already Received by Petitioners) The subsequent clarification of relief provided in *Coxcom Reconsideration* that the Petitioner "may not continue to seek settlement with any subscriber who has not yet concluded an agreement, and may not use information received from subscribers as evidence in litigation" [emphasis added] squarely applies to the current situation.

vi.   *Coxcom is the Complete Answer to VSCO's Opposition*

VSCO's opposition does not address the substance of the concern – that VSCO failed to comply with the statutory requirements of the DMCA. VSCO dedicated a substantial portion of its Memorandum to making bald allegations against Mr. Khimji, which is irrelevant to the interpretation of the explicit text of the DMCA. The ends do not justify the means.

7

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

VSCO's submissions mainly revolve around the alleged difficulty in identifying the alleged infringers. The same issue was also squarely answered in *Coxcom Findings and Recommendations* at page 14, footnote 3 that it would be open for VSCO to identify the John Does by way of a "John Doe" lawsuit, and filing a motion for third-party discovery to identify an otherwise anonymous John Doe defendant. VSCO appears to have cut some serious corners in shoehorning their trademark claim into the DMCA. That is not permissible under the law.

3. **Trademark Claims Cannot be Sneaked into the DMCA Takedown Process**

Even <u>before</u> *Crossfit, Inc. v. Alvies, Dist. Court,* ND Cal. 2014 (Case No. 13-3771 SC.), there was already guidance that trademark claims cannot be injected into the DMCA process:

> Another <u>best practice is to be sure to word the trademark takedown notice carefully so that it clearly asserts trademark rights and does not run afoul of § 512(f) by citing the DMCA as the authority for the notice</u>. To the extent the infringement entails content that infringes both trademark and copyright, it may be <u>prudent to send two separate notices, one dealing just with the trademark issues and one that is strictly a DMCA notice addressing the copyright infringement</u>.
>
> …
>
> **Endnotes**
>
> [1]It is <u>important to note that the DMCA is limited to copyright protection, and the law prohibits sending false notices requesting the takedown of material that is not protected by copyright or is not infringing copyright</u>. Case law is still developing in this area, but <u>improperly asserting trademark infringement under the DMCA might be considered an abusive copyright claim under § 512(f) of the DMCA</u>. See *Online Policy Group v. Diebold Inc.*, 72 U.S.P.Q.2d 1200 (N.D. Cal. 2004) (sending takedown notices to ISPs when the defendant knew the material in question was not protected by copyright found to be abusive copyright claims under DMCA).

[emphasis added] *A Quick Fix for Online Trademark Infringement*, published in The Federal Lawyer, July 2012 (Supplemental Declaration of Simon Lin, Exhibit B)

Subsequent to *Crossfit*, there has been numerous warnings or cautions of using the DMCA process to enforce trademark rights, including from the USPTO:

> <u>Inappropriate use of the DMCA as a vehicle to target trade mark infringement is a problem commonly reported by service providers</u>. A specific illustration of this kind of misuse is given in a series of takedown notifications issued by the owners of WhatsApp to the online software development community Github.
> …

8

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

> While the DMCA clearly applies to cases involving copyright infringement, it does not provide for trade mark protection.[154] Notably, there is no similar system to the notification and takedown process in place for these disputes.[155] By listing trade mark concerns as part of their takedown notice, WhatsApp appear to have sought the removal of legitimate content either through a misuse of the DMCA notification and takedown process, or by an attempt to "shoe-horn" their claim into its scope.[156]

[emphasis added] *Freedom of Speech and the DMCA: Abuse of the Notification and Takedown Process*, (2019) 41 E.I.P.R. 71, 79 (Supplemental Declaration of Simon Lin, Exhibit C)

> **Best Practice Tip:** DMCA take down procedures must be used carefully, as the specific procedures set forth under the Copyright Act of 1976[9] are for copyrights only. Many times, trademark owners attempt to use the DMCA procedures for alleged trademark infringements. Copyright infringement and trademark infringement are not the same. Be aware, the improper use of a DMCA takedown notice for enforcing trademarks, rather than copyrights, may constitute a violation of the DMCA (Section 512(f)) and result in monetary liability for the trademark owner.[10]
>
> [10] See *CrossFit, Inc. v. Alvies*, No. 13–3771, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014).

*The Importance of a Comprehensive Trademark Enforcement Program: The Changing Tides of Trademark Infringement*, NYSBA *Inside,* Spring/Summer 2016 (Supplemental Declaration of Simon Lin, Exhibit D)

USPTO also issued guidance reflecting the fact that other IP issues, such as trademarks, cannot be advanced via the DMCA process (Supplemental Declaration of Simon Lin, Ex. E).

VSCO's suggestion that they should be permitted to fuse together both copyright and infringement claims into a DMCA takedown request clearly runs afoul of the accepted practice in enforcing IP rights and rewards sloppiness. VSCO is really seeking an after-the-fact exemption for their improper use of the DMCA process for enforcing trademark rights, at least with respect to the Patreon Subpoena. Illegal shortcuts should not be endorsed.

4. **VSCO's Five Material Misrepresentations in the Supporting Declaration**

Despite Mr. Khimji having called out VSCO *thrice*[4] for filing declarations with obvious misrepresentations, VSCO continues to misrepresent facts in the declaration in opposition to this Motion to Quash, and then relies on those misrepresentations for their submissions.

---

[4] The **first** instance was the improper filing of a declaration to obtain a DMCA subpoena when VSCO clearly intended to use the information for pursuing trademark claims. The **second** instance was in file 3-24-cv-09361, in Mr. Khimji's reply on the Motion to Dismiss where Mr. Levad made

9

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

VSCO continues to make at least five material misrepresentations in their supporting Declaration for the opposition. While numerous assertions in Mr. Levad's Declaration are objectionable or argumentative, Mr. Khimji will focus on the pertinent misrepresentations.

    i.    *Mr. Levad's Declaration Falsely Asserts that Cloudflare is Actively Hosting the Allegedly Infringing Content*

At pages 4-6 of this Memorandum (above), Mr. Khimji has detailed VSCO's representations and evidence on Cloudflare and VSCO's false assertion that materials were "actively hosted" by Cloudflare. As detailed on those pages, VSCO's false assertion is squarely contradicted by Mr. Levad's Declaration filed in June 2024 (Dckt. 2-1). As discussed above, the contradiction does not appear to be inadvertent, and appears to be deliberate.

    ii.    *Mr. Levad's Declaration Insinuates VSCO May Raise Copyright Act Claims*

The next three misrepresentations in Mr. Levad's Declaration revolves around paragraphs 22-24 of that Declaration and is excerpted below for convenience:

> 22. Mr. Khimji retained counsel to respond and negotiate regarding VSCO's October 4, 2024, letter, and my colleague Mr. Alinder provided this counsel the documentation showing Mr. Khimji's involvement in the Infringing Websites produced pursuant to the DMCA Subpoenas. I personally reviewed this correspondence. However, after months of attempting to negotiate a resolution of the dispute in good faith with Mr. Khimji's counsel, Mr. Khimji ultimately refused to comply with this enforcement letter or provide any information, and terminated this counsel's representation.

> 23. On December 23, 2024, after carefully considering all known facts and applicable laws, VSCO initiated *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (the "Litigation") to protect its rights and its users without delay. VSCO's additional claims against Mr. Khimji and the other Defendants in the Litigation, including under the *Copyright Act* and/or DMCA, would be aided by additional discovery from Mr. Khimji and the other Defendants in the Litigation, as well as non-parties involved in the operation of the Infringing Websites and Infringing Reddit Communities, and VSCO reserves its right to amend the Complaint to assert those claims (and any other additional claims) at the appropriate time and with a more complete factual record.

> 24. On December 30, 2024, VSCO served the Complaint in the Litigation on Mr. Khimji.

---

inaccurate assertions about discovery and attempted to add in a screenshot that was never part of that case. The **third** instance is again in Mr. Khimji's reply on the Motion to Dismiss in file 3-24-cv-09361 where VSCO's in-house counsel, Mr. Gupta, filed a declaration asserting to VSCO's deletion policy that does not accord with VSCO's public statements about its own policies.

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

At para. 23, Mr. Levad asserts that VSCO could *later* amend its Complaint to raise either *Copyright Act* or DMCA claims. Mr. Levad's assertion ignores longstanding law and a desperate attempt at misrepresenting reality to excuse VSCO's improper use of the DMCA.

**Firstly,** the deadline for an amendment as of right expired more than a month ago (i.e., Fed. R. Civ. P. Rule 15(a)(1)(B), 21 days after motion to dismiss on March 31, 2025 would be April 21, 2025). Mr. Levad failed to explain why VSCO did not even propose amendments despite notice of this Motion to Quash on March 21, 2025, before the motion to dismiss.

**Secondly**, it is settled that non-exclusive licensees of copyrights have no standing to bring *Copyright Act* actions as 17 U.S.C. § 501(b) provides **only** "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled... to institute an action for any infringement of that particular right committed while he or she is the owner of it." The "exclusive rights" in a copyright are enumerated at 17 U.S.C. § 106. *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169-70 (9th Cir. 2013); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934 (7th Cir. 1993); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015).

Terms of Use in Mr. Levad's declaration (Ex. B, p. 13-14 [emphasis added] below) states VSCO only has a non-exclusive license from users. While VSCO appointed itself as an agent *authorized* to enforce users' rights, VSCO is not the *sole and exclusive* agent for copyright enforcement. Moreover, VSCO's lack of *any* obligation to take action is confirmation of the limited nature of its agency role. The appointment also does **not** extend to filing of lawsuits.

> **License You Grant to Us.** By using our Services, you grant us a royalty-free, sublicensable, non-exclusive, perpetual, irrevocable, worldwide license to use, reproduce, distribute, publicly perform, publicly display, and make derivative works of your Creator Content and AI Content (collectively, "**Content**")…
>
> **Anti-Piracy Enforcement.** VSCO strives to be a place where creativity flourishes. To that end, we're committed to protecting the intellectual property of VSCO and our Creators. To enable this protection, you authorize VSCO and our anti-piracy service providers (such as law firms) as your agents for the purpose of enforcing your intellectual property rights in your Content. You grant VSCO and our anti-piracy service providers authority to send or file notices on your behalf to enforce your intellectual property rights in your Content. However, you understand that we aren't obligated to take such action.

11

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

Mr. Levad's assertion at para. 23 of his Declaration simply ignores the legal reality that VSCO has no standing to represent the copyright owners in a *Copyright Act* action and VSCO's own Terms of Use completely undermines Mr. Levad's bald assertion or speculation.

While Mr. Khimji acknowledges that a recent decision of this Court suggests that the standing requirement under the DMCA may be more flexible than the *Copyright Act* (*Viral Drm LLC v. Seven West Media Limited*, Case No. 24-cv-06354-WHO (N.D. Cal. Feb. 28, 2025)), it still cannot save VSCO in this instance. Another court noted that similar website scraping allegations could not be sustained under the DMCA when the website operator has its front door wide open (*Couponcabin LLC v. Savings. Com, Inc.*, No. 2:14-CV-39-TLS (N.D. Ind. Jun. 8, 2016) citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952 (9th Cir. 2010)). In this case, VSCO's FAQ confirms its front door is *wide* open, and the same user images that VSCO is arguing over are readily retrievable on internet search engines:

> VSCO **does not offer the option to have a private profile** or account at this time. **Any media that you post to your VSCO account is public for anyone to see**, whether on the VSCO app or on VSCO's website, vsco.co.
>
> …
>
> If you have deleted images from your VSCO profile or have deactivated your VSCO account but is **still appearing in search engine results**, please read the following article on how to remove this content.

[emphasis added] (Supplemental Declaration of Simon Lin at Exhibit F).

In essence, there is no DMCA claim that could be raised, by amendment or otherwise.

**Thirdly,** and in any event, Mr. Levad also ignores recent guidance that a copyright registration certificate must be issued by the Copyright Office before a lawsuit can even be filed. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). Mr. Levad does not explain whether any of the copyright owners have filed copyright registration certificates, or how VSCO would cause the hundreds of millions of VSCO users to file copyright registration certificates for their works (VSCO Memorandum, p. 1, line 20).

Mr. Levad's insinuation of amending to include *Copyright Act* or DMCA claims is an attempt to justify improper use of the DMCA process. Abuses of process cannot be condoned.

   *iii.* <u>Mr. Levad's Incorrectly Claims that Mr. Khimji Terminated Former Counsel</u>

In para. 22 of his Declaration, Mr. Levad claimed that Mr. Khimji "terminated this counsel's representation." This strategic placement was designed to give the false impression that Mr. Khimji terminated his former counsel's representation before December 23, 2024, which caused the Complaint to be filed. Mr. Levad avoided referring to *any* correspondences (e.g. Declaration of Adam Khimji at para. 4-11 including exhibits).

On December 30, 2024, one week after the Complaint was filed, Mr. Alinder stated that:

> Thanks for the quick response, Jonathan [referring to Mr. Khimji's Canadian counsel]! <u>While I understand that you cannot represent him in California</u>, just to be clear, that doesn't change that <u>you have been representing him as legal counsel or that serving his legal counsel likely constitutes adequate service/notice for Mr. Khimji directly</u>. However, in an abundance of caution, we will also send to him directly. Putting that aside, I do hope that you are able to continue advising him going forward in some capacity, as I did think that our prior direct discussions were promising, even if not ultimately productive.

      [emphasis added] (Supplemental Declaration of Simon Lin at Exhibit G).

The above email makes clear that VSCO considered Mr. Khimji's former counsel was representing Mr. Khimji on December 30, 2024, when VSCO emailed the Complaint to Mr. Khimji's former counsel. Moreover, Mr. Levad's bald assertion that Mr. Khimji "terminated this counsel's representation" omits two material facts. **Firstly**, Mr. Levad omitted that Mr. Khimji's former counsel was licensed in Canada, but not in California. **Secondly**, Mr. Levad did not explain where he had the idea that Mr. Khimji "terminated" his former counsel's representation when that counsel cannot represent Mr. Khimji in California courts.

As a side note, the entire email chain enclosed in Exhibit G of the Supplemental Declaration of Simon Lin serves as *further* support of the timeliness of Mr. Khimji's filing of the Motion to Quash. Mr. Khimji was previously represented by a Canadian lawyer, who was not licensed in California, and appears to be wholly unfamiliar with U.S. law or civil procedure in U.S. courts and was even relying on VSCO's counsel for guidance. Mr. Levad, in paragraphs 25 of his Declaration, noted that Mr. Khimji's current counsel was retained on or about March 12, 2025. This Motion to Quash was served to VSCO within nine days, on March 21, 2025, as Mr. Levad also acknowledged. As noted within the Motion to Quash, Mr.

13

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK

Khimji did not file the motion immediately on March 21, 2025 as the motion has some connection to the separately filed Motion for Sanctions, which has a twenty-one days safe harbor period. Mr. Khimji intended to file both motions together to avoid confusion and the earliest day for such filing would have been on or around April 14, 2025. Mr. Khimji's counsel was out of town between April 22, 2025 to May 13, 2025 travelling overseas with family where internet connection was expected to be sporadic (Dckt 13-1 in Court File: 3-24-cv-09361). Filing the Motion to Quash on April 14, 2025 would have created a situation where Mr. Khimji's counsel may not be available to file a proper reply. At the time, it was unlikely for the parties to stipulate for a reasonable timetable, considering Mr. Khimji had requested a short extension to the deadline for an Answer in 3-24-cv-09361 but was outright refused.

On a further note, in paragraph 22, Mr. Levad is also attempting to give a false impression that Mr. Khimji acknowledged responsibility, when Mr. Khimji has stated all along that he was the victim of identity theft. In reply to page 17, line 1 of VSCO's Memorandum, VSCO's assertion that "Mr. Khimji has never alleged that his "VSCOclub" Patreon page ….did not post copyright-infringing materials" is **misleading**. Mr. Khimji maintained all along he had nothing to do with the allegedly infringing websites (Declaration of Adam Khimji at para. 11).

  iv. <u>Mr. Levad's Declaration Misrepresents How Mr. Khimji was Served</u>

Mr. Levad, at para. 24 of his Declaration, claimed that Mr. Khimji was served on December 30, 2024. Mr. Levad omits the material fact that VSCO's purported service was by email to Mr. Khimji's former counsel, as detailed above. Mr. Levad's assertion also omits the material fact that Mr. Khimji signed the Waiver of Summons on January 8, 2025.

  v. <u>Mr. Levad Misrepresents that Socialgirls.live was Part of the Complaint</u>

At paragraph 7 of his Declaration, Mr. Levad asserted that:

> 7. The domain names for the Infringing Websites <u>often incorporated the VSCO trademark</u> (e.g., <vsco.club>, <vsco.page>, <vsco.top>, <backupvs.co>, <downloadvsco.co>, <vscolookup.com>, <novsco.co>, <<u>glizzy.cafe</u>>, and <<u>downloader.se</u>>, and <<u>socialgirls.live</u>>, among others); and the subreddit names for the Infringing Reddit Communities often incorporated the VSCO trademark with a derogatory slur for the users (e.g., r/VSCOsluts, r/VSCOsluts0, r/VSCOslutss, r/VSCOslutsz2, r/VSCOsloots, and r/VSCO_Nudes, among others).

Setting aside the fact that the three underlined URLs does not even contain the VSCO wording, Mr. Levad is **repeating** a misrepresentation that was called out in Mr. Khimji's reply on the Motion to Dismiss (Dckt. 17 in file 3-24-cv-09361, p. 8-10 under the heading *i. Mr. Levad Submits a Screenshot for a Website that was Never Part of this Case*, Supplemental Declaration of Simon Lin at Exhibit H). It is clear <socialgirls.live> was never in the Complaint (Declaration of Adam Khimji, Exhibit A). Mr. Levad omitted these material facts.

VSCO is in fact desperately scouring the internet for any website to blame on Mr. Khimji, when there is not even a shred of evidence connecting Mr. Khimji to <socialgirls.live>.

**5.  Conclusion and Relief Sought**

Mr. Khimji submits that *Coxcom* serves as a **complete answer** to VSCO's opposition and the subpoenas must be quashed and VSCO enjoined from using the information, as in *Coxcom*.

*Coxcom* confirms that VSCO's timeliness objection is without merit at law. Moreover, as detailed on pages 13-14 (above), the timeframe between Mr. Khimji first retaining California-licensed counsel and the filing of the Motion to Quash was merely nine days. *Coxcom* also confirms that the strict statutory requirements of the DMCA must be followed to the tee, and subpoenas cannot be issued to a "mere conduit." VSCO relied on false evidence (or otherwise misrepresented the actual evidence) in asserting that Cloudflare hosted allegedly infringing materials, when VSCO's own emails with Cloudflare stated clearly *multiple times* that Cloudflare does not host websites. VSCO failed to even address the substance of the non-compliance with the DMCA for the Patreon Subpoena. VSCO is inviting the Court to endorse a practice of slotting trademark claims into the DMCA process, a practice that is widely criticized and clearly contrary to the explicit text and intent of the DMCA. Finally, VSCO also made numerous misrepresentations in the supporting declaration. This Court should exercise special caution in relying on VSCO's declaration, and submissions based on that declaration.

Date: June 2, 2025

Respectfully submitted,

By: _____*Simon Lin*_____

Simon Lin – State Bar No. 313661

15

**ADAM KHIMJI'S REPLY FOR THE MOTION TO QUASH DMCA SUBPOENA**
Case Number: 3:24-mc-80159-SK