ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:      *zalinder@sideman.com*
ANDREW M. LEVAD (State Bar No. 313610)
E-Mail:      *alevad@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Plaintiff
VISUAL SUPPLY COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DMCA SECTION 512(h) SUBPOENA TO (1) CLOUDFLARE, INC.; (2) PATREON, INC., and (3) NAMESILO, L.L.C. | Case No. 3:24-mc-80159-WHO<br><br>**OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]**<br><br>Date:      September 24, 2025<br>Time:      2:00 p.m.<br>Crtrm.:    2, 17th Floor<br><br>Honorable William H. Orrick |

Case No. 3:24-mc-80159 WHO

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT FACTUAL BACKGROUND ..........................................................1

    A.    VSCO, Its Services, And Its Intellectual Property ......................................1

    B.    VSCO Discovers Infringing Websites And Online Communities ...............2

    C.    VSCO Begins Copyright And Trademark Enforcement Against The
        Infringing Websites, But Is Unable To Ascertain The Creators' True
        Identities ......................................................................................................3

    D.    VSCO Requests Issuance Of DMCA Subpoenas To Identify The Creators
        Of The Infringing Websites, Which This Court Reviews And Approves..................4

    E.    Cloudflare And Patreon Provide Documents Responsive To The DMCA
        Subpoenas, And Both Identify Mr. Khimji ..................................................6

    F.    VSCO Sends A Copyright And Trademark Enforcement Letter To Mr.
        Khimji, But He Refuses To Comply .............................................................7

    G.    After Careful Consideration, VSCO Brought Suit Against Mr. Khimji
        Under The Lanham Act, The UCL, And The Common Law..................................8

    H.    Mr. Khimji Files The Motion To Quash In This Matter And A Series Of
        Meritless Motions In The Litigation ...........................................................8

    I.    VSCO Issues Additional Subpoenas In The Litigation, And Patreon
        Independently Identifies Mr. Khimji Again .................................................10

III.  LEGAL STANDARD .........................................................................................10

IV.   ARGUMENT ......................................................................................................11

    A.    Mr. Khimji's "Objection" To The R&R Should Be Rejected Because Mr.
        Khimji Consented To Magistrate Judge Kim's Jurisdiction Over The
        Motion ........................................................................................................11

    B.    The Federal Rules Of Civil Procedure Apply To VSCO's DMCA
        Subpoenas, And Mr. Khimji's Motion To Quash Was Untimely .........................12

    C.    Cloudflare Is A Proper Recipient Of DMCA Takedowns And DMCA
        Subpoenas, And Is Not A "Mere Conduit" Under The DMCA.............................16

    D.    VSCO's DMCA Takedown Notice To Patreon Substantially Complied
        With The Statute And Was Proper ...............................................................18

V.    CONCLUSION ...................................................................................................21

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

<div style="text-align:center">

**TABLE OF AUTHORITIES**

</div>

**Page(s)**

**Cases**

*Ali v. Grounds*,
 236 F. Supp. 3d 1241, 1249 (S.D. Cal. 2017), *aff'd*, 772 F. App'x 580 (9th Cir.
 2019)................................................................................................................ 11

*Cognosphere Pte. Ltd. v. X Corp.*,
 No. 23-MC-80294-PHK, 2024 WL 4227594 (N.D. Cal. Sept. 18, 2024) .............................. 14

*Columbia Pictures Indus., Inc. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013) ................................................................................ 16

*In re Cox Commc'ns, LLC*,
 No. CV 23-00426 JMS-WRP, 2024 WL 1836258, at *2 (D. Haw. Apr. 26,
 2024)................................................................................................................ 15

*In re DMCA Subpoena to eBay, Inc.*,
 No. 15CV922-BEN-MDD, 2015 WL 3555270 (S.D. Cal. June 5, 2015)................................ 11

*Freed v. Home Depot U.S.A., Inc.*,
 No. 18CV359-BAS (LL), 2019 WL 183833 (S.D. Cal. Jan. 14, 2019) ................................. 15

*Hamilton v. State Farm Fire & Cas. Co.*,
 270 F.3d 778 (9th Cir. 2001) ................................................................................. 12

*Hunter Killer Prods. v. Zarlish*,
 No. CV 19-00168 LEK-KJM, 2020 WL 2064912, at *4 (D. Haw. Apr. 29,
 2020)................................................................................................................ 17

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875, n. 2
 (N.D. Cal. 2022). ......................................................................................... 13, 15

*Jones v. PGA TOUR, Inc.*,
 668 F. Supp. 3d 907 (N.D. Cal. 2023), *appeal dismissed*, No. 23-15530, 2023
 WL 4405094 (9th Cir. June 22, 2023) ...................................................................... 11

*Perfect 10, Inc. v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007)........................................................................... 20, 21

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
 351 F.3d 1229 (D.C. Cir. 2003) ............................................................................. 17

*Shueisha Inc. v. Paypal Holdings, Inc.*,
 No. 22-MC-80273-JSC, 2023 WL 2277102 (N.D. Cal. Feb. 27, 2023) ................................. 17

<div style="text-align:left; font-style:italic; transform:rotate(-90deg)">
LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711
</div>

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

*In re Subpoena Internet*
    *subscribers of Cox Communications, LLC and CoxCom LLC*, 9th Cir., June 27,
    2024)..................................................................................................................... 15

*United States v. Reyna-Tapia*,
    328 F.3d 1114 (9th Cir. 2003) ............................................................................... 10

*V&B Props. LLC v. Atl. States Ins. Co.*,
    No. 8:23CV348, 2024 WL 1908100 (D. Neb. May 1, 2024)........................... 14, 15

**Statutes**

17 U.S.C. 512(c)(3)(A) ..................................................................................................... 18

17 U.S.C. § 512(6) ........................................................................................................... 13

17 U.S.C. § 512(a) ...................................................................................................... 16, 17

17 U.S.C. § 512(c)(3) ....................................................................................................... 11

17 U.S.C. § 512(h) ................................................................................................. 11, 13, 15

17 U.S.C. § 512(h)(3) ....................................................................................................... 11

28 U.S.C. § 636(b)(1) ....................................................................................................... 10

DMCA ................................................................................................................... *passim*

**Other Authorities**

First Amendment ............................................................................................................... 14

Fed. R. Civ. P. 45 ................................................................................................... 11, 14, 21

Fed. R. Civ. P. 45(d)(3) ......................................................................................... 13, 14, 16

Rule 45(d)(3)(A) ............................................................................................................... 15

Rule 45(d)(3)(B) ............................................................................................................... 15

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## I.    INTRODUCTION

VSCO fully complied with the DMCA subpoena process here. Defendant Adam Khimji's ("Mr. Khimji") real dispute is that the DMCA process here worked as intended, and he was finally caught as the ring-leader of the infringing websites despite extreme efforts to conceal his involvement. But that is not a basis to quash a DMCA subpoena.

Thus, in her Report and Recommendations ("R&R") denying his motion to quash these DMCA subpoenas, Magistrate Judge Kim correctly found his motion to quash to be without any merit. The Objection to the R&R filed by Mr. Khimji confirms that he has no new or better factual or legal basis to overturn or change Magistrate Judge Kim's R&R. Indeed, the objection itself is inconsistent with Mr. Khimji's clear consent to Magistrate Judge Kim's jurisdiction for all purposes in this matter. Judicial estoppel precludes Mr. Khimji from disavowing that consent now. In any event, Magistrate Judge Kim correctly concluded that Mr. Khimji's Motion to Quash was unreasonably delayed at least seven months after receiving notice of the subpoenas before moving to quash them. And, on the merits, Magistrate Judge Kim also correctly concluded that Mr. Khimji did not come close to meeting his burden to show the subpoenas were improper or otherwise objectionable. In short, the R&R is correct on the facts and the law.

Accordingly, VSCO respectfully requests that the Court adopt the R&R in full and deny Mr. Khimji's objections.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    VSCO, Its Services, And Its Intellectual Property

VSCO is a San Francisco Bay Area-based photo technology company and creator platform. Dkt. 6-1, Exhibit ("Ex.") A (the "Gupta Decl."), at ¶ 4. Since 2011, VSCO has cultivated an enormous and vibrant community of creators, to whom it provides innovative tools and resources to elevate their photography, video, and design craft. Gupta Decl. ¶ 4. Currently, VSCO has over 300 million registered users worldwide. Gupta Decl. ¶ 3.

As a trusted staple in the creative community for over a decade, VSCO rigorously protects the intellectual property rights of itself and its users. Specifically, VSCO owns and maintains a global trademark portfolio, including, among many other properties, four incontestable U.S.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 registrations for the word mark VSCO and three for its circular logo. U.S. Trademark Reg. Nos.

2 4,273,434; 4,672,062; 4,262,139; 4,716,756; 5,142,430; 5,271,667; and 5,125,103.

3     In addition, VSCO protects itself and its users through account registration and a

4 comprehensive Terms of Use ("TOU"). Gupta Decl. ¶ 5; Dkt. 6-1, Ex. B. Pursuant to the TOU,

5 VSCO's users represent and warrant that they have all necessary rights and permissions in the

6 content they post on VSCO's platform, including the copyrights in the images and other creative

7 works that they post, but the TOU authorizes VSCO to enforce those copyrights on its users'

8 behalf. Dkt. 6-1, Ex. B at p. 3. The TOU further prohibits copying, scraping, or distribution of

9 VSCO users' content. Dkt. 6-1, Ex. B at p. 2.

10     Finally, VSCO also employs technological access controls, such as disabling the ability to

11 right click and save images and requiring login credentials for certain activities, and data security

12 tools to prevent third parties from downloading VSCO users' content, sharing or distributing that

13 content, or accessing those users' deleted content or the metadata (such as geolocation data) in the

14 content. Gupta Decl. ¶ 5, Dkt. 6-1, Ex. B at p. 1-3.

15    **B.**    **VSCO Discovers Infringing Websites And Online Communities**

16     In May 2023, VSCO discovered the first of a series of websites (the "Infringing Website")

17 and Reddit communities (the "Infringing Reddit Communities") that targeted VSCO to take

18 advantage of its user base. Dkt. 6-1, ¶ 5. The Infringing Websites and Infringing Reddit

19 Communities contained thousands of copyright-protected images of VSCO users, particularly

20 women, that had been scraped from those users' VSCO accounts, as well as those users' VSCO

21 account names and, in many instances, the geolocation data associated with those users' photos.

22 Dkt. 6-1, ¶ 6; Dkt. 5-1, Ex. B, pp. 26-39. The domain names for the Infringing Websites often

23 incorporated the VSCO trademark (*e.g.*, <vsco.club>, <vsco.page>, <vsco.top>, <backupvs.co>,

24 <downloadvsco.co>, <vscolookup.com>, <novsco.co>, <glizzy.cafe>, and <downloader.se>, and

25 <socialgirls.live>, among others); and the subreddit names for the Infringing Reddit Communities

26 often incorporated the VSCO trademark with a derogatory slur for the users (*e.g.*, r/VSCOsluts,

27 r/VSCOsluts0, r/VSCOslutss, r/VSCOslutsz2, r/VSCOsloots, and r/VSCO_Nudes, among others).

28 Dkt. 6-1, ¶ 7.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

The Infringing Websites and Infringing Reddit Communities are interactive and allow internet users to traffic these VSCO users' copyright-protected images among one another, advertise, and sell access to the website creators' personal repositories of scraped images, and, in many instances, see exactly where these users' photos were taken using an interactive "Map" feature applying the stolen images' geolocation data. Dkt. 6-1, ¶ 8. The Infringing Websites and Infringing Reddit Communities all contained substantial unauthorized use of VSCO's trademarks. Dkt. 6-1.

In addition to the Infringing Websites and Infringing Reddit Communities, VSCO discovered a Patreon account named "VSCOclub." Dkt. 6-1, ¶ 9; Dkt. 5-1, Ex. B, p. 36. The "VSCOclub" Patreon was associated with the Infringing Websites <vsco.club> and <glizzy.cafe>, and allowed users to buy subscriptions to repositories of these VSCO users' images, including their deleted content, and advertised that the Patreon account owner had "10+ million [VSCO users'] accounts saved." Dkt. 6-1, ¶ 9; Dkt. 5-1, Ex. B, p. 36.

The creators and operators of the Infringing Websites, Infringing Reddit Communities, and the "VSCOclub" Patreon account took extreme measures to obfuscate their true identities. Dkt. 6-1, ¶ 10. They operated only under aliases and anonymous email addresses and used proxy services to register the Infringing Websites, which shielded their identities from WHOIS and other lookup tools. Dkt. 6-1, ¶ 10. The <vsco.club> and <glizzy.cafe> websites contained the anonymous contact email address "vscoclub@protonmail.com." Dkt. 6-1, ¶ 11.

### C. VSCO Begins Copyright And Trademark Enforcement Against The Infringing Websites, But Is Unable To Ascertain The Creators' True Identities

VSCO began copyright and trademark enforcement efforts against Infringing Websites and Infringing Reddit Communities promptly after it discovered them. Dkt. 6-1, ¶ 12. VSCO, through counsel, submitted trademark and copyright infringement reports to the domain registrars and web hosts for the Infringing Websites in May 2023, July 2023, July 2023, December 2023, January 2024, March 2024, April 2024, May 2024, July 2024, September 2024, October 2024, and November 2024, requesting that they take down or disable access to the Infringing Websites. Dkt. 6-1, ¶ 13. VSCO, through counsel, also submitted trademark and copyright infringement reports to

3

1    Reddit in December 2023, January 2024, February 2024, July 2024, August 2024, September

2    2024, and October 2024, requesting that Reddit take down or disable access to the Infringing

3    Reddit Communities. Dkt. 6-1, ¶ 13.

4        On August 28, 2023, VSCO filed a complaint pursuant to the Uniform Domain Name

5    Dispute Resolution Policy ("UDRP") in the World Intellectual Property Organization Arbitration

6    and Mediation Center ("WIPO"), seeking the transfer of the <vsco.page>, <vsco.club>, and

7    <glizzy.cafe> domains. Dkt. 6-1, ¶ 14. In this proceeding, on September 1, 2023, WIPO identified

8    the registrant behind <vsco.club> and <glizzy.cafe> with the alias, "Aidan Salamon", with a

9    fictitious address in Toronto, Canada, and the email address "vscoclub@protonmail.com." Dkt. 6-

10    1, ¶ 14. And on August 28, 2023, WIPO determined that the <vsco.page>, <vsco.club>, and

11    <glizzy.cafe> domains had been registered in violation of the UDRP, and ordered that they all be

12    transferred to VSCO. Dkt. 6-1, ¶ 14.

13        On February 9, 2024, VSCO filed another UDRP complaint in WIPO, seeking transfer of

14    the <vsco.top> domain. Dkt. 6-1, ¶ 15. In this proceeding, on February 14, 2024, WIPO identified

15    the registrant behind <vsco.top> with the proxy service "Nice IT Services Group Inc.", with a

16    fictitious address in Loubiere, Dominica, and an anonymized email address

17    "domains+vsco.top@dendrite.network." Dkt. 6-1, ¶ 15. And on April 3, 2024, WIPO determined

18    that the <vsco.top> domain had been registered in violation of the UDRP, and ordered that it be

19    transferred to VSCO. Dkt. 6-1, ¶ 15.

20    **D.    VSCO Requests Issuance Of DMCA Subpoenas To Identify The Creators Of**

21    **The Infringing Websites, Which This Court Reviews And Approves**

22        After months of escalating trademark and copyright enforcement actions against Infringing

23    Websites and Infringing Reddit Communities, on June 28, 2024, VSCO initiated the instant

24    miscellaneous matter, *In re DMCA Subpoenas to Cloudflare, Inc.*, et al., No. 24-mc-80159-SK

25    (N.D. Cal.), pursuant to 17 U.S.C. § 512(h) of the Digital Millennium Copyright Act ("DMCA"),

26    seeking the issuance of subpoenas ("DMCA Subpoenas") to ascertain the identities of the persons

27    responsible for the infringement of its users' copyrights and circumvention of VSCO's security

28

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    measures, which the TOU authorizes VSCO to do on its users' behalf. Gupta Decl. ¶ 5; Dkt. 6-1, ¶
2    4, Ex. B at p. 3.

3        Specifically, VSCO sought issuance of DMCA Subpoenas to three internet service
4    providers involved in the creation or operation of the Infringing Websites that hosted or monetized
5    the depraved scraped content: (1) Cloudflare, Inc. ("Cloudflare"), the registrar and/or web host for
6    <vsco.club>, <glizzy.cafe>, <vsco.page>, <vsco.top>, and <downloader.se>; (2) Patreon, Inc.
7    ("Patreon"), the operator of the monetization platform for the "VSCOclub" Patreon; and (3)
8    NameSilo, LLC ("NameSilo"), the registrar for <vsco.top>. Dkt. 6-1, ¶ 16. In the DMCA
9    Subpoenas, VSCO sought production of documents from these internet services providers
10   sufficient to identify the persons who had unlawfully accessed, downloaded, scraped and further
11   copied and distributed copyright-protected images from VSCO's platform on the Infringing
12   Websites. Dkt. 6-1, ¶ 16.

13       In its request for issuance of the DMCA Subpoenas, VSCO submitted the records of its
14   copyright and DMCA takedown notices issued to Cloudflare, Patreon, and NameSilo that it had in
15   its possession:

16       As for Cloudflare, VSCO submitted a declaration that its counsel used Cloudflare's
17   established intellectual property abuse reporting procedures to submit copyright infringement and
18   DMCA abuse reports regarding <vsco.club>, <glizzy.cafe>, <vsco.page>, <vsco.top>, and
19   <downloader.se> on July 13, 2023; January 3 and 10, 2024; March 15 and 22, 2024; and April 2
20   and 9, 2024. VSCO also submitted copies of Cloudflare's confirmation of receipt of these
21   copyright infringement and DMCA abuse reports, and a chart displaying 250 links of webpages
22   that displayed copyright-protected content on the Infringing Websites and the corresponding
23   VSCO webpages where that content had been unlawfully copied. Dkt. 2-1, ¶¶ 3-6, Exs. A-D.
24   Cloudflare complied with VSCO's abuse reports and disabled access to the reported materials.

25       As for Patreon, VSCO submitted a declaration that its counsel used Patreon's established
26   intellectual property abuse reporting procedures to submit a copyright and trademark takedown
27   notice regarding the "VSCOclub" Patreon on July 25, 2023. VSCO also submitted a copy of
28   Patreon's confirmation of receipt of this takedown notice. Because the "VSCOclub" Patreon page

1  contained both copyright and trademark infringements, VSCO's abuse report contains allegations
2  of both copyright and trademark infringement. Dkt. 2-1, ¶ 7, Ex. E; *see also* Dkt. 5-1, Ex. B, p. 36.

3  As for NameSilo, VSCO submitted a declaration that its counsel used NameSilo's
4  established intellectual property abuse reporting tools to submit a copyright and trademark
5  infringement and DMCA abuse report regarding <vsco.top> on January 3, 2024. VSCO also
6  submitted copies of NameSilo' confirmation of receipt of this abuse report and a screen-capture
7  showing VSCO's submission of the abuse report. Dkt. 2-1, ¶ 8, Ex. F.

8  On June 28, 2024, Magistrate Judge Kim granted VSCO's request for issuance of the
9  DMCA Subpoenas. Dkt. 4. VSCO then served the DMCA Subpoenas on Cloudflare, Patreon, and
10  NameSilo on July 1 and 2, 2024. Dkt. 6-1, ¶ 17. No party challenged the DMCA Subpoenas. Dkt.
11  6-1. ¶ 18. And, on June 28, 2024, the Court terminated the miscellaneous matter. *Id.*

12  **E.     Cloudflare And Patreon Provide Documents Responsive To The DMCA**
13  **Subpoenas, And Both Identify Mr. Khimji**

14  In August 2024, Cloudflare and Patreon produced documents in response to the DMCA
15  Subpoenas issued to them. Dkt. 6-1, ¶ 19. Specifically, Cloudflare produced account registration
16  records for <vsco.club> and <glizzy.cafe> (which is a domain redirect from <vsco.club>), and
17  Patreon produced account registration records for the "VSCOclub" Patreon. Dkt. 6-1, ¶ 19. These
18  records display, consistent with one another, Mr. Khimji's full name, his physical address, the
19  email address "vscoclub@protonmail.com," which ties to the same email identified in the WIPO
20  proceedings, and also, as to Cloudflare, Mr. Khimji's credit card information. Dkt. 6-1, ¶ 19;
21  Declaration of Andrew M. Levad In Support Of VSCO's Opposition To Motion For De Novo
22  Determination Of Dispositive Matter Referred To Magistrate Judge [Motion To Quash DMCA
23  Subpoenas] ("Levad Decl.") ¶ 3, Exhibits ("Exs.") A, B.

24  NameSilo did not produce documents in response to the DMCA Subpoena issued to it;
25  rather NameSilo identified the proxy service "Nice IT Services Group Inc." (the same proxy
26  service that WIPO had identified to VSCO in connection with the UDRP action against
27  <vsco.top>), and an anonymized domain reseller "CONFIDENTIAL.DOMAINS" as the
28  registrants for the Infringing Website located at the domain <vsco.top>, and directed VSCO to

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  pursue further discovery from them. Levad Decl., ¶ 4, Ex. C. However, because their very purpose

2  is to obscure domain registrant's true identities, the identification of "Nice IT Services Group Inc."

3  and "CONFIDENTIAL.DOMAINS" by NameSilo did not yield substantive information for

4  VSCO's investigation of <vsco.top>. Levad Decl. ¶ 4.

5      **F.      VSCO Sends A Copyright And Trademark Enforcement Letter To Mr.**

6                **Khimji, But He Refuses To Comply**

7          On October 4, 2024, VSCO sent Mr. Khimji a copyright and trademark enforcement letter

8  using the contact information it learned through the DMCA Subpoenas. Dkt. 6-1, ¶ 21; Dkt. 5-1,

9  Ex. B, pp. 26-39. In this letter, VSCO demanded that Mr. Khimji cease and desist his conduct that

10 violated the Copyright Act, the DMCA, the Lanham Act, state unfair competition statutes, and the

11 common law, and further demanded that he cooperate in VSCO's investigation into the other

12 Infringing Websites and Infringing Reddit Communities. Dkt. 6-1, ¶ 21; Dkt. 5-1, pp. 26-30.

13 VSCO specifically sought information on the specific means by which Mr. Khimji and the other

14 creators of the Infringing Websites circumvented VSCO's security measures in violation of the

15 DMCA to scrape and download its users' copyright-protected images and related data. Dkt. 6-1, ¶

16 21; Dkt. 5-1, pp. 28-29.

17         Mr. Khimji retained counsel to respond and negotiate, and VSCO provided this counsel the

18 documentation showing Mr. Khimji's involvement in the Infringing Websites produced pursuant

19 to the DMCA Subpoenas. Dkt. 6-1, ¶ 22. Specifically, on October 11, 2024, VSCO's counsel

20 informed Mr. Khimji's counsel that Cloudflare had produced documents pursuant to subpoena that

21 identified Mr. Khimji as the infringer. Dkt. 5-1, Ex. D, pp. 44-46; Levad Decl. ¶ 5, Ex. D. VSCO's

22 counsel also sent Mr. Khimji's counsel copies of the documents that Cloudflare had produced

23 pursuant to the DMCA Subpoena that identified Mr. Khimji, namely, Cloudflare's payment and

24 account registration records for the Infringing Websites <vsco.club> and <glizzy.cafe>. Dkt. 5-1,

25 Ex. D, p. 46; Levad Decl. ¶ 5, Ex. D. However, after months of attempting to negotiate a

26 resolution of the dispute in good faith with Mr. Khimji's counsel, Mr. Khimji ultimately refused to

27 comply with this enforcement letter or provide any information. Dkt. 6-1, ¶ 22. Mr. Khimji then

28 terminated that counsel's representation. Dkt. 6-1, ¶ 22.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**G.    After Careful Consideration, VSCO Brought Suit Against Mr. Khimji Under The Lanham Act, The UCL, And The Common Law**

Upon Mr. Khimji's refusal to cooperate or provide any information to assist VSCO's investigation into the violations of VSCO and its users' rights, VSCO carefully and strategically evaluated all known facts and applicable laws. Dkt. 6-1, ¶ 23. This miscellaneous matter had been terminated at this point for almost six months, and as the above makes clear, was never the sole basis for VSCO's action. Dkt. 6-1, ¶¶ 17, 23.

On December 23, 2024, VSCO brought a civil action against Mr. Khimji and Doe Defendants under the Lanham Act, California's Unfair Competition Law, and California common law. *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 1) (the "Litigation"). Proceeding swiftly with trademark, unfair competition, trespass to chattels, and breach of contract claims allowed VSCO to enforce its rights and protect its users without delay. Dkt. 6-1, ¶ 23. The Complaint in the Litigation discusses the DMCA Subpoenas in detail, including that the documents Cloudflare and Patreon produced in response to the DMCA Subpoenas identified Mr. Khimji as the creator of at least two Infringing Websites. Dkt. 5-1, Ex. A, ¶¶ 39-41.

**H.    Mr. Khimji Files The Motion To Quash In This Matter And A Series Of Meritless Motions In The Litigation**

On December 30, 2025, after Mr. Khimji refused to cooperate, VSCO served the Complaint in the Litigation on Mr. Khimji. *Id.* ¶ 24; *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 1).

On January 8, 2025, Mr. Khimji executed a waiver of service of the summons in the Litigation, setting his deadline to respond to the Complaint in the Litigation on March 31, 2025. *Visual Supply Company v. Khimji et al.*, No. 3:24-cv-09361-WHO (N.D. Cal.) (Dkt. 9).

On March 12, 2025, Mr. Khimji's new counsel, Simon Lin, informed VSCO that he had been retained to represent Mr. Khimji in the Litigation. Dkt. 6-1, ¶ 25.

On March 21, 2025, Mr. Khimji served (but did not file) a Motion to Quash and a meritless Motion for Sanctions on VSCO. Dkt. 6-1 ¶ 26.

1    On March 31, 2025, Mr. Khimji filed a Motion to Dismiss and/or Stay the Litigation,

2    seeking dismissal of VSCO's Complaint for lack of personal jurisdiction, lack of subject matter

3    jurisdiction, arbitration (despite no arbitration proceeding being initiated), forum non conveniens,

4    and failure to state a claim. *Visual Supply Company v. Khimji*, No. 3:24-cv-09361-WHO (Dkt.

5    15).

6    On May 12, 2025, Mr. Khimji filed a Motion to Quash the DMCA Subpoenas. Dkt. 5. And

7    on June 6, 2025, Mr. Khimji filed a voluntary consent to Magistrate Judge jurisdiction over the

8    Motion to Quash. Dkt. 9.

9    On May 27, 2025, VSCO filed its Opposition to Mr. Khimji's Motion to Quash. Dkt. 6.

10    The factual and legal precedents cited by VSCO established that the Motion to Quash was

11    untimely and procedurally improper, given that the underlying miscellaneous matter had been

12    terminated for nearly a year at that point, and that Mr. Khimji never objected to the DMCA

13    Subpoenas until – at a minimum – seven months after he received notice of them from VSCO's

14    counsel. Dkt. 6 at p 10. VSCO further pointed out that the DMCA does not shield past infringers

15    from discovery pursuant to DMCA subpoenas, and that Mr. Khimji, as an infringer of both

16    copyrights and trademarks, could not hide behind his status as a copyright infringer to save

17    himself from trademark infringement liability in the underlying litigation. Dkt. 6 at pp. 11-17. Mr.

18    Khimji filed his Reply on June 2, 2025, and did not effectively refute these arguments. Dkt. 7.

19    On June 23, 2025, Magistrate Judge Kim heard the Motion to Quash. Dkt. 17. And on June

20    25, 2025, Magistrate Judge Kim issued a Report and Recommendation denying the Motion to

21    Quash (the "R&R") and an Order reassigning the Motion to Quash to this Court. Dkts. 18, 19. On

22    the same day, Magistrate Judge Kim also issued a Report and Recommendation denying the

23    Motion for Sanctions. *Visual Supply Company v. Khimji*, No. 3:24-cv-09361-WHO (Dkt. 37).

24    On July 9, 2025, Mr. Khimji filed a motion styled as the instant Motion For De Novo

25    Determination Of Dispositive Matter Referred To Magistrate Judge. Dkt. 20.

26    On July 10, 2025, this Court denied Mr. Khimji's Motion to Dismiss and/or Stay the

27    Litigation on all grounds. *Visual Supply Company v. Khimji*, No. 3:24-cv-09361-WHO (Dkt. 40).

28    On July 15, 2025, Mr. Khimji filed an appeal to the Ninth Circuit of this Court's denial of the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Motion to Dismiss and/or Stay the Litigation. And on July 16, 2025, Mr. Khimji filed an

2   Emergency Motion to Stay the Litigation Pending Appeal in the Ninth Circuit. *Visual Supply*

3   *Company v. Khimji*, No. 25-4348 (9th Cir.) (Dkts. 3, 4), which was granted on July 23, 2025.

4           **I.     VSCO Issues Additional Subpoenas In The Litigation, And Patreon**

5                    **Independently Identifies Mr. Khimji Again**

6           On June 17, 2025, VSCO served Rule 45 subpoenas on Patreon and Reddit seeking

7   documents to identify the persons behind the "VSCOclub" Patreon account and the Infringing

8   Reddit Communities, respectively. Levad Decl. ¶ 7. Mr. Khimji did not object to or move to quash

9   these subpoenas. Levad Decl. ¶ 7.

10          On July 11, 2025, Patreon responded in part and objected in part to the Rule 45 subpoena

11  and produced account registration and payment records for the "VSCOclub" Patreon account.

12  Levad Decl. ¶ 8, Ex. E. These records identify Mr. Khimji as the creator of the "VSCOclub"

13  Patreon and that he used the "vscoclub@protonmail.com" email account. Levad Decl. ¶ 8, Ex. E.

14  **III.    LEGAL STANDARD**

15          De novo review of the findings of a magistrate judge is required if "objection is made." 28

16  U.S.C. § 636(b)(1). "Neither the Constitution nor the statute requires a district judge to review, de

17  novo, findings and recommendations that the parties themselves accept as correct." *United States*

18  *v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). However, "[a] judge of the court may

19  accept, reject, or modify, in whole or in part, the findings or recommendations made by the

20  magistrate judge." 28 U.S.C. § 636(b)(1). "Only objections that reference specific portions of the

21  report and recommendation will trigger de novo review—general or conclusory objections do not

22  suffice." *Jones v. PGA TOUR, Inc.*, 668 F. Supp. 3d 907, 916 (N.D. Cal. 2023), *appeal dismissed*,

23  No. 23-15530, 2023 WL 4405094 (9th Cir. June 22, 2023) (citing and quoting *Ali v. Grounds*, 236

24  F. Supp. 3d 1241, 1249 (S.D. Cal. 2017), *aff'd*, 772 F. App'x 580 (9th Cir. 2019)); Civil L.R. 72-

25  3(a) (objections by motion must "specifically identify the portions of the Magistrate Judge's

26  findings, recommendation, or report to which objection is made and the reasons and authority

27  supporting the motion.").

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

1    The DMCA provides a statutory scheme for copyright holders and their agents to notify

2    internet service providers of the existence of allegedly copyrighted material on those providers'

3    servers. 17 U.S.C. § 512(c)(3). When a copyright holder or agent submits such a takedown notice

4    to an internet service provider, it may also request that the court issue a subpoena to the provider.

5    17 U.S.C. § 512(h); *In re DMCA Subpoena to eBay, Inc.*, No. 15CV922-BEN-MDD, 2015 WL

6    3555270, at *1 (S.D. Cal. June 5, 2015). If the court grants the copyright holder or agent's request,

7    the subpoena authorizes and orders the provider to provide the copyright holder with information

8    sufficient to identify the alleged infringer. 17 U.S.C. § 512(h)(3).

9    The DMCA and Federal Rules do not contain any provisions permitting a person already

10    identified pursuant to a DMCA subpoena to quash the subpoena that identified him. *See generally*

11    Fed. R. Civ. P. 45; 17 U.S.C. § 512(h).

12    **IV.    ARGUMENT**

13    Mr. Khimji fails to provide any valid basis to disturb the R&R. There is none. As a

14    threshold matter, he should be judicially estopped from challenging the R&R because he

15    consented to Magistrate Judge Kim's jurisdiction over the Motion to Quash. His challenge to the

16    DMCA Subpoenas, nearly a year after the providers already complied with them and at a

17    minimum seven months after he was provided notice of the subpoena, was untimely. And contrary

18    to Mr. Khimji's unsupportable speculation, VSCO's DMCA takedown notices to Cloudflare and

19    Patreon were issued to proper recipients and substantially complied with the relevant statutory

20    requirements. As such, the Court should deny the Motion and adopt the R&R in full.

21    **A.    Mr. Khimji's "Objection" To The R&R Should Be Rejected Because Mr.**

22    **Khimji Consented To Magistrate Judge Kim's Jurisdiction Over The Motion**

23    As a preliminary matter, Mr. Khimji voluntarily consented to Magistrate Judge jurisdiction

24    over the Motion.[1] His purported objection would render his full consent meaningless, if not

25    judicially estopped. Judicial estoppel is an equitable doctrine that precludes a party from gaining

26

27    _____

[1] While Cloudflare responded and consented to magistrate jurisdiction, as did Mr. Khimji and

28    VSCO, Patreon and NameSilo did not respond despite notice. Levad Decl., ¶ 6. As such, no party objected to magistrate jurisdiction, and only Mr. Khimji has objected to the R&R.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  an advantage by asserting one position, and then later seeking an advantage by taking a clearly

2  inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

3  Courts invoke judicial estoppel not only to prevent a party from gaining an advantage by taking

4  inconsistent positions, but also because of "general consideration[s] of the orderly administration

5  of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant

6  playing fast and loose with the courts." *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th

7  Cir.1990)).

8        By affirmatively consenting to have the Motion heard and decided by Magistrate Judge

9  Kim (Dkt. 9), Mr. Khimji represented to the Court that he would accept Magistrate Judge Kim's

10  authority to decide the matter. He should not now be allowed to disavow that representation

11  simply because he is dissatisfied with the outcome. Mr. Khimji not only failed to object to

12  Magistrate Judge jurisdiction, he affirmatively invoked it. As a result, it would be inconsistent

13  with this prior position and inequitable to the parties if he is permitted to reject the R&R merely

14  because he disagrees with the recommended outcome. To allow otherwise would invite

15  gamesmanship and undermine the integrity of the judicial process. Accordingly, the Court should

16  find that Mr. Khimji is judicially estopped from challenging Magistrate Judge Kim's R&R, and

17  adopt the R&R in full on this basis alone.

18        **B.    The Federal Rules Of Civil Procedure Apply To VSCO's DMCA Subpoenas,**

19              **And Mr. Khimji's Motion To Quash Was Untimely**

20        Mr. Khimji's first argument against the R&R's ruling that his Motion to Quash was

21  untimely is that the Federal Rules of Civil Procedure simply do not apply to him, or, in his words,

22  that they are not applicable to "the Situation." Mot. at 2:3. Of course, the rules apply to Mr.

23  Khimji, the same as everyone else.

24        The DMCA statute plainly states that DMCA subpoenas "shall be governed to the greatest

25  extent practicable by those provisions of the Federal Rules of Civil Procedure governing the

26  issuance, service, and enforcement of a subpoena duces tecum." 17 U.S.C. § 512(6). And under

27  the Federal Rules, motions to quash subpoenas must be filed "timely" and by "a person subject to

28  or affected by [the] subpoena," with "timely" generally meaning "before the date specified with

1  compliance with the subpoena" or at least "within a reasonable time after the conclusion of

2  informal efforts to resolve the [receiving party's] objections." Fed. R. Civ. P. 45(d)(3); *In re*

3  *DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875, n. 2 (N.D. Cal. 2022).

4       As the R&R recognized, this District does indeed apply this timeliness requirement to

5  motions to quash DMCA subpoenas. R&R at 3-4; *In re DMCA § 512(h) Subpoena to Twitter, Inc.*,

6  608 F. Supp. 3d at 875 (applying Fed. R. Civ. P. 45(d)(3) timeliness requirement to DMCA

7  subpoena). And as the R&R properly concluded, Mr. Khimji's Motion to Quash was not filed

8  timely. Although the R&R did not find that Mr. Khimji had received notice of the DMCA

9  Subpoenas before their recipients had already complied with them, Mr. Khimji did have notice at

10  the latest in October 2024, <u>*seven months*</u> before Mr. Khimji filed the Motion to Quash. VSCO

11  went so far as to provide Mr. Khimji with copies of the very documents produced in response to

12  the DMCA Subpoena to Cloudflare that identified him (Dkt. 5-1, Ex. D, p. 46; Levad Decl., ¶ 5,

13  Ex. D), yet Mr. Khimji chose not to challenge the DMCA Subpoenas, apparently hoping that

14  VSCO would simply go away.

15       There is a factual dispute as to whether Mr. Khimji first received notice of the DMCA

16  Subpoenas in October 2024, or much earlier, by virtue of Mr. Khimji operation of the

17  "vscoclub@protonmail.com" email account. Multiple independent records from both Cloudflare

18  and Patreon indicate that Mr. Khimji did operate the email address "vscoclub@protonmail.com."

19  Levad Decl. ¶¶ 3, 8, Exs. A-B, E. Thus, VSCO respectfully submits that there is a very high

20  likelihood that Cloudflare and Patreon provided notice of the DMCA Subpoenas to

21  "vscoclub@protonmail.com" before they complied with them, and that Mr. Khimji received such

22  notices.

23       Regardless, at a minimum it is undisputed he received notice in October 2024, such that

24  Mr. Khimji then waited another seven months before challenging the DMCA subpoenas. Seven

25  months' delay in challenging the DMCA Subpoenas falls well outside the bounds of "a reasonable

26  time" to move to quash them, and Mr. Khimji has not identified any precedent to the contrary. Mr.

27  Khimji's Motion similarly lacks any citation to any authority quashing DMCA subpoenas nearly a

28  year after their recipients had already complied with them and identified the infringer—Mr.

1    Khimji. Nor does Mr. Khimji cite any precedent that he, the identified infringer, even has standing

2    to challenge the issuance of the DMCA Subpoenas that identified him *post facto*. As such, the

3    Motion lacks merit.

4          Mr. Khimji relies on three cases to support his flawed view that the timeliness requirement

5    of Rule 45(d)(3) does not apply to his Motion to Quash, none of which holds water here.

6          <u>*First*,</u> Mr. Khimji cites *Cognosphere Pte. Ltd. v. X Corp.*, No. 23-MC-80294-PHK, 2024

7    WL 4227594, at *2 (N.D. Cal. Sept. 18, 2024). Mot. at 2. But there, the court recognized only that

8    the DMCA subpoena recipient was objecting to the subpoena on First Amendment grounds, rather

9    than under the Federal Rules. *Id.* The court conducted a First Amendment analysis and overruled

10    the recipient's objections; the decision had nothing to do with timeliness. *Id.* at *9. Here, Mr.

11    Khimji does not raise a First Amendment objection—a review of the copyrighted materials Mr.

12    Khimji published on his Infringing Websites and Patreon account shows that they are photographs

13    of young women that Mr. Khimji was distributing for personal commercial gain, not First

14    Amendment protected materials. Dkt. 5-1, Ex. B, pp. 31-36. As such, *Cognosphere* is wholly

15    inapposite and does not help Mr. Khimji.

16          <u>*Second*,</u> Mr. Khimji cites *V&B Props. LLC v. Atl. States Ins. Co.*, No. 8:23CV348, 2024

17    WL 1908100, at *3, n. 5 (D. Neb. May 1, 2024). Mot. at 4. But this decision is not from this

18    District or even from within the Ninth Circuit, and, is not persuasive or helpful to the issues here.

19    In *V&B Props.*, the subpoena recipient objected to a subpoena on two grounds, one enumerated

20    under Rule 45(d)(3)(A) and one enumerated under Rule 45(d)(3)(B). 2024 WL 1908100, at *3, n.

21    5. The court parsed out those objections and imposed the timeliness requirement to those

22    objections raised under Rule 45(d)(3)(A) but not to those under Rule 45(d)(3)(B), noting that Rule

23    45(d)(3)(A) contains the word "timely" whereas Rule 45(d)(3)(B) does not. *Id.* But here, Mr.

24    Khimji has not raised any objections enumerated under Rule 45(d)(3)(B), or any other objection

25    with a statutory basis sufficient to override this District's precedent that the timeliness requirement

26    applies to Mr. Khimji's Motion to Quash the DMCA Subpoenas here. *See* R&R at 305; *In re*

27    *DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 875; *see also Freed v. Home Depot*

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

1  *U.S.A., Inc.*, No. 18CV359-BAS (LL), 2019 WL 183833, at *4 (S.D. Cal. Jan. 14, 2019). Thus,

2  *V&B Props.* also does not support Mr. Khimji's conclusion.

3      *Finally,* Mr. Khimji cites *In re Cox Commc'ns, LLC*, No. CV 23-00426 JMS-WRP, 2024

4  WL 1836258, at *2 (D. Haw. Apr. 26, 2024) (appeal pending, *In re Subpoena Internet subscribers*

5  *of Cox Communications, LLC and CoxCom LLC*, 9th Cir., June 27, 2024). Mot. at 6. But that case

6  is also out of District, is currently on appeal, and also is not helpful to Mr. Khimji. As Magistrate

7  Judge Kim noted, *In re Cox* "did not address the issue of timing or whether it was reasonable" and

8  therefore "does not assist Khimji." R&R at 4-5. Rather than accept the plain reading that *In re Cox*

9  is inapposite on the issue of timeliness, Mr. Khimji argues that *In re Cox's* "silence on the

10  timeliness topic" somehow "lends support" to his position. Mot. at 6. That is nonsense. A case's

11  failure to address an issue is not authority on that issue, particularly where, as here, the question of

12  timeliness was neither raised nor considered in the case.[2] R&R at 4-5. Mr. Khimji cannot

13  manufacture relevance on the issue of timeliness in *In re Cox* when the case plainly has none. *Id.*;

14  2024 WL 1836258, at *2.

15      In sum, Mr. Khimji had at least seven months of notice of the DMCA Subpoenas before

16  attempting to quash them (and likely had even more notice given that at least three subpoenas

17  identified Mr. Khimji as the operator of the "vscoclub@protonmail.com" email account). Last

18  year, he was even provided copies of documents produced pursuant to the subpoenas that

19  identified him as the infringer, and was represented by counsel. Levad Decl., ¶ 5, Ex. D. Mr.

20  Khimji's arguments that the timeliness requirement in Rule 45(d)(3) do not apply to his

21  "situation" each fail in turn and are contrary to the precedent of this District. Mr. Khimji cannot

22  skirt the Federal Rules just because they are inconvenient to him. Magistrate Judge Kim was

23  _____

24  [2] Despite admitting that *In re Cox* is "silent" on the topic of timeliness, Mr. Khimji also makes a
   perplexing reversal, stating, without citation, that the timeliness issue was "actually raised and

25  rejected at the motion for reconsideration." Mot. at 6. He appears to be referring to a footnote in
   the case explicating the court's rejection the copyright owners' argument that the subpoena

26  recipient lacked standing to seek relief from the subpoena even though the recipient did not file the
   underlying motion to quash. *In re Cox*, 2024 WL 1836258 at *11, n. 3. The court held that the

27  subpoena recipient did have standing to challenge the subpoena because its rights were implicated
   by it, even if the challenge amounted to a "late" objection to it. *Id.* The word "late" in this footnote

28  does not refer to the timeliness of the underlying motion to quash. *Id.*

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  correct that under these circumstances "a delay of over seven months is not a reasonable amount

2  of time to move to quash." R&R at 5 (collecting cases). Thus, this Court should adopt the R&R

3  and deny the Motion on this basis alone.

4      **C.    Cloudflare Is A Proper Recipient Of DMCA Takedowns And DMCA**

5          **Subpoenas, And Is Not A "Mere Conduit" Under The DMCA**

6      Mr. Khimji next argues that Magistrate Judge Kim was wrong to not quash the DMCA

7  Subpoena issued to Cloudflare, arguing that Cloudflare is a "mere conduit," and, as such, is not a

8  proper recipient of DMCA takedown notices or subpoenas at all. This argument is unsupported by

9  any fact or law and is untethered from reality. Cloudflare is a classic service provider within the

10 meaning of the DMCA. Confirming this, Cloudflare has its own DMCA webpage and a web portal

11 specifically for submitting DMCA takedowns. *See* https://abuse.cloudflare.com/dmca, Levad

12 Decl. ¶ 9, Ex. F. Indeed, VSCO used this portal to submit its takedowns to Cloudflare, and

13 Cloudflare complied with them. Cloudflare, by its own representations and conduct, simply does

14 not fall within the narrow scope of entities considered "mere conduits" under the DMCA.

15     In the context of the DMCA, a "mere conduit" refers to a type of online service provider

16 that transmits digital content initiated by users without modifying or selecting it, and therefore

17 qualifies for safe harbor protection under 17 U.S.C. § 512(a). *See Columbia Pictures Indus., Inc. v.*

18 *Fung*, 710 F.3d 1020, 1040-42 (9th Cir. 2013). To qualify as a "mere conduit" under 17 U.S.C. §

19 512(a), the provider must transmit user-directed material without initiating it, not modify the

20 content, not store the content beyond automated intermediate copying necessary for transmission,

21 and have no control over the content or recipient. *Id.* (citing 17 U.S.C. § 512(a)(1-5)). For

22 example, in *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229,

23 1233 (D.C. Cir. 2003), Verizon was held to be such a "mere conduit" because it only acted as an

24 internet pipeline "for data transferred between two internet users, such as persons sending and

25 receiving e-mail or, as in [Verizon's] case, sharing P2P files." Like Verizon, a "mere conduit"

26 cannot even takedown specific identified infringing materials without shutting off the pipeline in

27 full.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Cloudflare is not a "mere conduit." Mr. Khimji's argument to the contrary is rooted solely

2   in his contention that Cloudflare "does not store any alleged copyright infringe materials." Mot. at

3   8. But this is not the case. It misstates the law and evinces Mr. Khimji's misunderstanding of the

4   services Cloudflare offers. Cloudflare's own abuse reporting website explains such services and

5   why they go beyond the passive transmission envisioned by 17 U.S.C. § 512(a). Levad Decl., ¶¶

6   9-10, Exs. F-G. For example, Cloudflare provides content delivery network (CDN) services,

7   caches website content to optimize delivery, and, contrary to Mr. Khimji's assertions, provides

8   "temporary _storage_ to improve performance." Levad Decl., ¶ 10, Ex. G. Furthermore, as noted

9   above, it is obvious that Cloudflare is a proper recipient for DMCA takedowns and resulting

10  DMCA subpoenas because Cloudflare _provides its own DMCA reporting tool to copyright owners._

11  https://abuse.cloudflare.com/dmca, Levad Decl. ¶ 9, Ex. F. A "mere conduit" would not be able to

12  comply with a takedown notice for any content, and would object to a DMCA subpoena on that

13  basis, like Verizon did in _Recording Indus._, 351 F.3d at 1233. Here, beyond providing its own tool

14  specifically for DMCA reporting, Cloudflare did comply with VSCO's takedown notices

15  submitted using this tool, and then complied with the DMCA Subpoena without objection. Levad

16  Decl., ¶ 9; Dkt. 6-1. ¶ 18. Indeed, numerous courts have approved DMCA subpoenas to be issued

17  to Cloudflare to identify infringers, including within this District. _Shueisha Inc. v. Paypal_

18  _Holdings, Inc._, No. 22-MC-80273-JSC, 2023 WL 2277102, at *1 (N.D. Cal. Feb. 27, 2023)

19  (noting Cloudflare provided information in response to a DMCA subpoena); _see also Hunter_

20  _Killer Prods. v. Zarlish_, No. CV 19-00168 LEK-KJM, 2020 WL 2064912, at *4 (D. Haw. Apr. 29,

21  2020) (DMCA takedowns and subpoenas were issued to Cloudflare and NameSilo and "in

22  response to the DMCA subpoenas, NameSilo and Cloudflare provided [the copyright owner] with

23  information about [the infringer].").

24      For these reasons, Mr. Khimji's argument that this Court should reject the R&R on the

25  ground that Cloudflare was not a proper recipient of VSCO's DMCA takedown notice or DMCA

26  Subpoena fails. There is no good faith argument—and Mr. Khimji has made none—that the

27  DMCA Subpoena to Cloudflare was not properly requested or issued. The Court should deny his

28  objection and adopt the R&R on this basis as well.

17

Case No. 3:24-mc-80159WHO

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**D.    VSCO's DMCA Takedown Notice To Patreon Substantially Complied With The Statute And Was Proper**

Finally, Mr. Khimji disagrees with Magistrate Judge Kim's conclusion that VSCO's DMCA takedown notice to Patreon underlying its DMCA Subpoena substantially complied with the DMCA subpoena statute. Mot. at 10-13. Again, Mr. Khimji is wrong.

The DMCA requires that the copyright owners or their agents' takedown notices "substantially" include the following: (1) a physical or electronic signature; (2) identification of copyrighted work claimed to have been infringed; (3) identification of the material that is claimed to be infringing or the subject of infringing activity in a way reasonably sufficient to permit the provider to locate the material; (4) contact information for the complaining party; (5) notice that the infringer's use of the material is unauthorized; and (6) notice that the complaining party is authorized to act on behalf of the copyright owner. 17 U.S.C. 512(c)(3)(A). Courts have broad discretion to evaluate whether a request meets statutory criteria. *See* R&R at 7.

Magistrate Judge Kim determined that VSCO's takedown notice to Patreon substantially contained the foregoing statutory requirements, and she was right. *Id.* VSCO's takedown notice to Patreon stated in relevant part:

- "We represent Visual Supply Company ("VSCO")." (*I.e.*, notice that the complaining party is authorized to act on behalf of the copyright owner.);

- "It has recently come to our attention that an unknown individual or entity has created the creator account and website https://www.patreon.com/vscoclub (the "Infringing Website") using the Patreon platform.." (*I.e.*, identification of the material that is claimed to be infringing or the subject of infringing activity in a way reasonably sufficient to permit the provider to locate the material.);

- "[T]he Infringing Website is also using the VSCO Marks in connection with the unlawful distribution of the intellectual property (Protected Images) of individual VSCO creator/users." (*I.e.*, identification of copyrighted work claimed to have been infringed.);

- "The Infringing Website is accessing my client's website (vsco.co) without authorization and using technological measures to bypass certain protections my client has put in place to protect its user's content, and then displaying the Protected Images and facilitating the download of such images in violation of the DMCA's anti-circumvention measures. VSCO, nor its user community,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 3:24-mc-80159WHO
OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

have authorized the Infringing Website to post these images." (*I.e.*, notice that the infringer's use of the material is unauthorized.).

Dkt. 2-1, Ex. E. The takedown notice then provides VSCO's counsel's email signature and contact information, *i.e.*, contact information for the complaining party and an electronic signature. Dkt. 2-1, Ex. E. As such, VSCO's takedown notice included substantially all of the statutory requirements to be effective.

Patreon understood the foregoing to be a copyright infringement notice and complied with it without objection, and responded to VSCO's counsel as such: "The material you identified in *your notification of claimed copyright infringement* is no longer live on Patreon." Dkt. 2-1, Ex. E (emphasis added). Furthermore, the Court reviewed VSCO's notice to Patreon when evaluating whether to issue the DMCA Subpoenas, and determined that it complied with the statute. Dkt. 4. And Patreon was provided this notice and an opportunity to challenge it once again when it received VSCO's DMCA Subpoena, and, once again, Patreon did not challenge the notice or the propriety of the DMCA Subpoena. Dkt. 6-1, ¶ 17. Substantial compliance with the statute and juridical review cured any alleged technical defect with this notice, particularly where the provider complied voluntarily and no one—including Mr. Khimji—challenged it at the time.

Mr. Khimji asserts that VSCO's notice to Patreon "fail[ed] to identify *any* copyrighted work that is allegedly infringed." Mot. at 12. But this position unravels upon a review of Mr. Khimji's VSCOclub Patreon page, which is comprised entirely of copyright-protected images belonging to VSCO users, and is advertised as such: "I have many, many users saved from vsco.. I will send the entire account of the user…all photos and videos they uploaded *that I have saved*. So that sometimes means deleted pictures/videos as well." Dkt. 5-1, p. 36 (emphasis in original). The entire website located at https://www.patreon.com/vscoclub was infringing and in violation of the DMCA, and VSCO's takedown notice accordingly identified the entire website. Dkt. 2-1, Ex. E.

Mr. Khimji's attempts to analogize the instant matter to *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007) to support his argument. But his reliance is misplaced. In *Perfect 10*, an internet service provider argued on summary judgment that a copyright owner had not adequately complied with the DMCA in notifying the provider of copyright infringement. *Id.*

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 3:24-mc-80159WHO
OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   The circumstances were extreme; the owner's "notice" to the provider was a combination of a

2   22,185 page document production, a set of documents containing a spreadsheet referencing entries

3   within the 22,185 page document set, and a set of interrogatory responses in a litigation that

4   incorporated the spreadsheet by reference. *Id.* The copyright owner acknowledged that these

5   document sets individually did not comply with the DMCA, but argued that all of these

6   documents, taken together, constituted one adequate DMCA takedown notice. *Id.* The court

7   rejected this argument, first because those documents merely identified infringing files without

8   any statement regarding authorized representation of the copyright owner or belief that use of the

9   material was unauthorized, and second because the Ninth Circuit was unwilling to impose a

10  burden upon the provider to "find the relevant line in the spreadsheet indicating ownership

11  information, then comb the 22,185 pages provided by [the owner] in order to find the appropriate

12  image, and finally copy into a browser the location printed at the top of the page." *Id.* at 1112-13.

13  Thus, because the DMCA requires that takedown notices be "*a* written communication" and it

14  would have taken the provider "substantial time to piece together the relevant information for each

15  instance of claimed infringement" the Ninth Circuit held that the copyright owner's notice was did

16  not substantially comply with the statute. *Id.* at 1113 (emphasis in original). *Perfect 10* is therefore

17  completely inapposite.

18      Here, unlike *Perfect 10*, VSCO provided Patreon with "*a* written communication," not tens

19  of thousands of pages of documents internally referencing one another for Patreon to "comb."

20  Furthermore, in *Perfect 10*, the *provider* was challenging the DMCA takedown notice, whereas

21  here, Patreon not only did not challenge VSCO's takedown notice, it complied with it noting that

22  it was responding to a "*notification of claimed copyright infringement*," and then complied with

23  the resulting DMCA Subpoena. Nowhere in *Perfect 10*, or any other case cited in the Motion, is

24  there any authority for the *identified infringer* to *post facto* challenge the DMCA notice that led to

25  his eventual identification. This is particularly true where, as here, there was plainly substantial

26  compliance at all steps of the way along the DMCA process by VSCO. Thus, *Perfect 10* does not

27  provide any support for Mr. Khimji to attack VSCO's DMCA takedown notice to Patreon.

28

1    Furthermore, beyond Mr. Khimji's challenges to the DMCA Subpoena to Patreon being

2  baseless, they are also moot. Patreon has now also independently identified Mr. Khimji as the

3  operator of the "VSCOclub" Patreon (and the "vscoclub@protonmail.com" email address) with

4  records produced pursuant to a Rule 45 subpoena in the Litigation. Levad Decl. ¶ 8, Ex. E. Mr.

5  Khimji was provided notice and the opportunity to object to this subpoena, and he did not do so.

6  Levad Decl. ¶ 7. Thus, even if VSCO's DMCA takedown notice or DMCA Subpoena to Patreon

7  were somehow defective (which they are not), any such purported defects would be moot in any

8  case because Patreon has produced additional records to VSCO with the same identifying

9  information regarding Mr. Khimji in the Litigation pursuant to a Rule 45 subpoena.

10    For these reasons, VSCO's DMCA notice to Patreon complied with the statute, Mr. Khimji

11  has identified no reason for this Court to deviate from the R&R, and, in any event, such challenges

12  are moot. Magistrate Judge Kim's R&R is correct on the facts and the law, and therefore, the

13  Court should adopt it regarding the Patreon subpoena as well.

14  **V.    CONCLUSION**

15    Magistrate Judge Kim correctly denied Mr. Khimji's Motion to Quash the DMCA

16  Subpoenas, and nothing in Mr. Khimji's Motion supports a different outcome. His Motion to

17  Quash was untimely, legally flawed, and grounded in a misreading of the DMCA. And his

18  continued efforts to obstruct a straightforward and lawful discovery process nearly a year after its

19  completion only further underscore the baselessness of his position. VSCO complied with the

20  DMCA in issuing its takedown notices and requesting the DMCA Subpoenas, and Mr. Khimji

21  failed to meet his burden to identify any authority to the contrary. For the foregoing reasons, this

22  Court should adopt the R&R in full, and deny Mr. Khimji's Motion to Quash.

23  DATED: July 23, 2025                    SIDEMAN & BANCROFT LLP

24

25                    By:

26                        Zachary J. Alinder
                          Attorneys for Plaintiff
27                        VISUAL SUPPLY COMPANY

28

OPPOSITION TO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
REFERRED TO MAGISTRATE JUDGE [MOTION TO QUASH DMCA SUBPOENAS]

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711